Patsy Takemoto MINK et al., Plaintiffs,

v.

UNIVERSITY OF CHICAGO et al., Defendants.

No. 77 C 1431.

United States District Court,
N. D. Illinois, E. D.

March 17, 1978.

On Motion to Dismiss Amended
Complaint Oct. 13, 1978.

Robert A. Filpi, Paul F. Stack, Chicago, Ill., John Cary Sims, Alan B. Morrison and William B. Schultz, Washington, D. C., for plaintiffs.

John Cadwalader Menk, Algimantas Kezelis, Menk, Bishop & Kezelis, James W. Gladden, Jr., Roger W. Barrett, Mayer, Brown & Platt, Chicago, Ill., for defendant University of Chicago.

Richard C. Bartelt, Max E. Wildman, Wildman, Harrold, Allen & Dixon, Chicago, Ill., Lane D. Bauer, John C. Monica, Steven C. Parrish, Kansas City, Mo., for defendant Eli Lilly and Co.

## MEMORANDUM OPINION

GRADY, District Judge.

Plaintiffs have brought this action[1] on behalf of themselves and some 1,000 women who were given diethylstilbestrol ("DES") as part of a medical experiment conducted by the defendants, University of Chicago and Eli Lilly & Company, between September 29, 1950, and November 20, 1952. The drug was administered to the plaintiffs during their prenatal care at the University's Lying-In Hospital as part of a double blind study to determine the value of DES in preventing miscarriages. The women were not told they were part of an experiment, nor were they told that the pills administered to them were DES. Plaintiffs claim that as a result of their taking DES, their daughters have developed abnormal cervical cellular formations and are exposed to an increased risk of vaginal or cervical cancer. Plaintiffs also allege that they and their sons have suffered reproductive tract and other abnormalities and have incurred an increased risk of cancer.

The complaint further alleges that the relationship between DES and cancer was known to the medical community as early as 1971, but that the defendants made no effort to notify the plaintiffs of their participation in the DES experiment until late 1975 or 1976 when the University sent letters to the women in the experiment informing them of the possible relationship between the use of DES in pregnant women and abnormal conditions in the genital tracts of their offspring. The letter asked for information to enable the University to contact the sons and daughters of the plaintiffs for medical examination.

The complaint seeks recovery on three causes of action. The first alleges that the defendants committed a series of batteries on the plaintiffs by conducting a medical experiment on them without their knowledge or consent. The administration of

---

1. Jurisdiction is based on diversity of citizenship.

DES to the plaintiffs without their consent is alleged to be an "offensive invasion of their persons" which has caused them "severe mental anxiety and emotional distress due to the increased risk to their children of contracting cancer and other abnormalities." The second count is grounded in products liability and seeks to recover damages from defendant Lilly premised on its manufacture of DES as a defective and unreasonably dangerous drug. Finally, the plaintiffs allege that the defendants breached their duty to notify plaintiffs that they had been given DES while pregnant and that children born from that pregnancy should consult a medical specialist. Throughout the complaint plaintiffs claim the defendants intentionally concealed the fact of the experiment and information concerning the relationship between DES and cancer from the plaintiffs.

Both defendants have moved to dismiss the complaint for failure to state a claim. We will deny the motions as to the first cause of action, and grant the motions as to the second and third causes of action.

*Battery*

■ We must determine whether the administration of a drug, DES, to the plaintiffs without their knowledge or consent constitutes a battery under Illinois law. The defendants argue that the plaintiffs' first count is really a "lack of informed consent" case premised on negligence. Because the named plaintiffs have not alleged specific physical injury to themselves, the defendants contend they have failed to state a claim for negligence and the count should be dismissed.[2] However, if we find the action to be based on a battery theory, it may stand notwithstanding the lack of an allegation of personal physical injury.

True "informed consent" cases concern the duty of the physician to inform his

patient of risks inherent in the surgery or treatment to which he has consented. While early cases treated lack of informed consent as vitiating the consent to treatment so there was liability for battery, the modern view "is that the action . . . is in reality one for negligence in failing to conform to the proper standard, to be determined on the basis of expert testimony as to what disclosure should be made." W. Prosser, *Law of Torts* § 32, at 165 (4th ed. 1971). Nonetheless, a battery action may still be appropriate in certain circumstances. Where the patient has not consented to the treatment, it is meaningless to ask whether the doctor should have revealed certain risks necessary to make the consent an "informed" one. The distinction between battery and negligence is elucidated in *Trogun v. Fruchtman,* 58 Wis.2d 569, 596, 207 N.W.2d 297, 311–12 (1973):

The courts of this country have recognized essentially two theories of liability for allegedly unauthorized medical treatment or therapy rendered by physicians to their patients. The first of these theories is the traditional intentional tort of battery or assault and battery which is simply defined as the unauthorized touching of the person of another. Underlying this theory of liability is, of course, the general feeling that a person of sound mind has a right to determine, even as against his physician, what is to be done to his body. Under this theory, liability is imposed upon a physician who has performed non-emergency treatment upon a patient without his consent.

\* \* \* \* \* \*

The second theory of liability, permitted by a majority of courts, is grounded upon negligence principles rather than on intentional tort. . . . "[This] doctrine of 'informed consent' . . .

2. We agree with the defendants that if the first cause of action is characterized as negligence, it fails to state a claim. With the exception of a conclusory statement of reproductive tract abnormalities in paragraph 1, the complaint does not allege any physical injury to the plaintiff class. There is no allegation of specific physical injury to any named plaintiff. The damage alleged in the first count is mental distress to the plaintiffs and an increased risk of cancer to the plaintiffs and their children. These allegations are insufficient to support a claim for negligence. *Needham v. White Laboratories,* 76 C 1101 (N.D.Ill.1976); *Rheingold v. E. R. Squibb & Sons,* 74 Civ. 3420 (S.D.N.Y. 1975).

concerns the duty of the physician or surgeon to inform the patient of the risk which may be involved in treatment or surgery."

As for the application of the distinction, we find the analysis of the court in *Cobbs v. Grant,* 8 Cal.3d 229, 104 Cal.Rptr. 505, 512, 502 P.2d 1, 8 (1972), persuasive:

> The battery theory should be reserved for those circumstances when a doctor performs an operation to which the patient has not consented. When the patient gives permission to perform one type of treatment and the doctor performs another, the requisite element of deliberate intent to deviate from the consent given is present. However, when the patient consents to certain treatment and the doctor performs that treatment but an undisclosed inherent complication with a low probability occurs, no intentional deviation from the consent given appears; rather, the doctor in obtaining consent may have failed to meet his due care duty to disclose pertinent information. In that situation the action should be pleaded in negligence.

■■■ Illinois courts have adopted the modern approach to true informed consent cases, and have treated them as negligence actions. *Green v. Hussey,* 127 Ill.App.2d 174, 262 N.E.2d 156 (1970); *Miceikis v. Field,* 37 Ill.App.3d 763, 347 N.E.2d 320 (1976). However, they have not overruled earlier cases which recognize a cause of action in battery for surgery performed without a patient's consent.[3] *Pratt v. Davis,* 224 Ill. 300, 79 N.E. 562 (1906); *Church v. Adler,* 350 Ill.App. 471, 113 N.E.2d 327 (1953). Thus, it appears the two separate theories continue to exist in Illinois, and

battery may be the proper cause of action in certain situations, for example, where there is a total lack of consent by the patient.[4] *See, Illinois Pattern Jury Instructions: Civil,* Comment to § 105.05, at 327.

The question thus becomes whether the instant case is more akin to the performance of an unauthorized operation than to the failure to disclose the potential ramifications of an agreed to treatment. We think the situation is closer to the former. The plaintiffs did not consent to DES treatment; they were not even aware that the drug was being administered to them. They were the subjects of an experiment whereby non-emergency treatment was performed upon them without their consent or knowledge.

This case is thus distinguishable from the other DES cases cited by the defendants. There is no indication that the plaintiffs in *Rheingold v. E. R. Squibb & Sons, Inc.,* 74 Civ. 3420 (S.D.N.Y.1975) and *Needham v. White Laboratories,* 76 C 1101 (N.D.Ill. 1976), were unwitting participants in a drug experiment. The plaintiffs in this action are in a different position from patients who at least knew they were being given some form of drug. The latter must rely on a negligence action based on the physician's failure to disclose inherent risks; the former may bring a battery action grounded on the total lack of consent to DES drug treatment. Accordingly, we will analyze the plaintiffs' first cause of action under a battery theory.

■■■ Battery is defined as the unauthorized touching of the person of another. To be liable for battery, the defendant must have done some affirmative act, intended to cause an unpermitted contact. "[I]t is

---

**3.** The plaintiff in *Green v. Hussey* denied any consent to the radiation therapy she received, asserting that "she was *asked* nothing, [s]he was *told* that she was going to be receiving cobalt radiation treatments." 262 N.E.2d at 157. The court in *Green* analyzed the action under a negligence theory of informed consent. The distinction from the instant case is that Miss Green was at least told the treatments she received over a period of several weeks were radiation treatments and some explanation was given concerning the nature of the therapy. In

the instant case, the plaintiffs were completely unaware of the DES treatment. Indeed the double-blind nature of the study resulted in affirmative concealment of the fact of drug treatment from the patients.

**4.** We disagree with defendants that the battery theory is applicab'e only in cases of unconsented operations. The gravamen of a battery action is the plaintiff's lack of consent, not the form of the touching.

enough that the defendant sets a force in motion which ultimately produces the result. . . . Proof of the technical invasion of the integrity of the plaintiff's person by even an entirely harmless, but offensive, contact entitles him to vindication of his legal right by an award of nominal damages, and the establishment of the tort cause of action entitles him also to compensation for the mental disturbance inflicted upon him." W. Prosser, *Law of Torts* § 9, at 35 (4th ed. 1971).

"The gist of the action for battery is not the hostile intent of the defendant, but rather the absence of consent to the contact on the part of the plaintiff." Id. at 36. "The essence . . . [of the] question in a battery case involving a physician is what did the patient agree with the physician to have done, and was the ultimate contact by the physician within the scope of the patient's consent." *Cathemer v. Hunter*, 27 Ariz.App. 780, 558 P.2d 975, 978 (1976). In sum, to state a cause of action for battery, the plaintiffs must allege intentional acts by the defendants resulting in offensive contact with the plaintiffs' persons, and the lack of consent to the defendants' conduct.

The administration of DES to the plaintiffs was clearly intentional. It was part of a planned experiment conducted by the defendants. The requisite element of intent is therefore met, since the plaintiffs need show only an intent to bring about the contact; an intent to do harm is not essential to the action. *Prosser* at 36.

The act of administering the drug supplies the contact with the plaintiffs' persons. "It is not necessary that the contact with the other's person be directly caused by some act of the actor. All that is necessary is that the actor intend to cause the other, directly or indirectly, to come in contact with a foreign substance in a manner which the other will reasonably regard as offensive." *Restatement (Second) of Torts*

§ 18, Comment c at 31 (1965). We find the administration of a drug without the patient's knowledge comports with the meaning of offensive contact. Had the drug been administered by means of a hypodermic needle, the element of physical contact would clearly be sufficient. We believe that causing the patient to physically ingest a pill is indistinguishable in principle.

Finally, there is the question of consent. As previously stated, this is the real crux of the issue in cases involving a physician's treatment of his patient. If the patient has assented to the doctor's treatment, he may not later maintain an action in battery. *Cathemer v. Hunter*, 558 P.2d at 978. The defendants argue that the plaintiffs consented to treatment when they admitted themselves to the University's Lying-In Hospital for prenatal care. The scope of the plaintiffs' consent is crucial to their ultimate recovery in a battery action. The defendants' privilege is limited at least to acts substantially similar to those to which the plaintiffs consented. If the defendants went beyond the consent given, to perform substantially different acts, they may be liable. The time, place and circumstances will affect the nature of the consent given. "It is . . . possible that the consent given will be sufficiently general in its terms to cover the particular operation [or treatment], or that the surgeon may be authorized with complete freedom to do whatever he thinks best to remedy whatever he finds, particularly where the patient has signed one of the written forms in common use in hospitals." *Prosser* at 104. These questions, however, are questions of fact which are to be determined by the jury, not by this court on a motion to dismiss. The plaintiffs have alleged sufficient lack of consent to the treatment involved to state a claim for battery[5] against both defendants.[6]

---

**5.** Because we find plaintiffs have stated a claim for battery, we do not reach the question of whether the same count states a claim for intentional infliction of emotional distress or misrepresentation.

**6.** Plaintiffs' allegations are sufficient to support a claim for respondeat superior liability on the part of both defendants. They allege that the experiment was performed by employees of both defendants with their knowledge and ac-

*Strict Liability*

In their second cause of action, plaintiffs allege that the DES ingested by them was "defective and unreasonably dangerous at the time it was manufactured, and Lilly is therefore strictly liable to the plaintiffs for their damages." Complaint ¶ 32. The damage claimed under this count appears in paragraphs 24, 26, 28, 29 and 31 of the complaint. Paragraphs 24, 26 and 29 speak only of injury to the plaintiffs' children. Paragraph 28 claims plaintiffs have incurred a risk of cancer and other abnormalities, and paragraph 31 alleges "severe mental anxiety and emotional distress due to the increased risk to their children of contracting cancer and other abnormalities."

The doctrine of products liability adopted by the Illinois courts is stated in section 402A of the *Restatement (Second) of Torts.* See *Suvada v. White Motor Co.*, 32 Ill.2d 612, 210 N.E.2d 182 (1965). The section provides in relevant part:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for *physical harm* thereby *caused to the ultimate user or consumer.* . . . (emphasis added).[7]

■■■■ Clearly, one of the essential elements in a claim for strict liability is physical injury to the plaintiff. The closest the complaint comes to alleging physical injury is the allegation of a "risk" of cancer. The mere fact of risk without any accompanying physical injury is insufficient to state a claim for strict products liability. *Rheingold v. E.R. Squibb & Sons*, 74 Civ. 3420

(S.D.N.Y.1975). Likewise, the plaintiffs may not rely on injury to their children to state a claim for relief for themselves, even though they allege mental anxiety and emotional distress as a consequence of the injury to their children. *Needham v. White Laboratories*, 76 C 1101 (N.D.Ill.1976); *Illinois Law and Practice: Damages* § 74.

■■■■ The plaintiffs argue that they have alleged personal physical injury in paragraph 1, which states that DES "has or may cause reproductive tract and other abnormalities in themselves." There is no indication that any of the named plaintiffs have suffered any of these "abnormalities." Without more concrete allegations of injury to the named plaintiffs, the second count must be dismissed for failure to state a claim.[8]

*Failure to Notify*

■■■ In their third cause of action, plaintiffs assert that the defendants breached their duty to inform plaintiffs and their children of the experiment and of the precautions which the children should take to minimize the risk of contracting cancer. Complaint ¶ 33. This duty allegedly arose in 1971 when the defendants learned of the relationship between DES and cancer. Plaintiffs claim that defendant Lilly had made no attempt to contact the plaintiff class, and that the notice given by the University in 1975 and 1976 was insufficient to fulfill the obligation because of the delay, and because it failed to advise of the precautions which should be taken by DES

---

quiescence. It also appears from the complaint that the experiment was performed within the scope of employment of defendants' employees. See *Bremen State Bank v. Hartford Accident and Indemnity Co.*, 427 F.2d 425, 428 (7th Cir. 1970).

7. Comment *k* provides for special application of the doctrine of strict liability in cases of prescription drugs. See *Lawson v. G.D. Searle & Co.*, 64 Ill.2d 543, 1 Ill.Dec. 497, 500–01, 356 N.E.2d 779, 782–83 (1976). However, since this count must be disposed of on other grounds, we will not explore the ramifications of the prescription drug exception at this time.

8. The plaintiffs would have us bolster the allegations of their complaint by reference to supplemental affidavits which were not attached as exhibits to their complaint or incorporated therein. It would be inappropriate to consider the facts contained in these affidavits on a motion to dismiss for failure to state a claim as distinguished from a jurisdictional attack. *Land v. Dollar*, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Exchange Nat. Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126 (2d Cir. 1976). The proper course is for plaintiffs to amend their complaint to include these factual allegations.

children.[9] This failure to notify has allegedly "injured some plaintiffs, increasing the risk of cancer to their children by depriving them of the ability to take the medically recommended precautions, including frequent check-ups." Complaint, ¶ 39.

We agree that both defendants had a duty to notify the plaintiff patients of the risks inherent in DES treatment when they became aware, or should have become aware, of the relationship between DES and cancer. While in substance this duty is the same for both, the source of the obligation is slightly different. The University's duty to notify is simply an extension of the duty of physicians to warn their patients of the risks inherent in treatment. *Canterbury v. Spence*, 150 U.S.App.D.C. 263, 464 F.2d 772 (1972), *cert. denied*, 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972); *Miceikis v. Field*, 37 Ill.App.3d 763, 347 N.E.2d 320 (1976). As previously noted, this is really a question of negligence distinct from the battery count, and the elements of negligence must be shown for recovery. When the University hospital became aware, or should have become aware, of facts which would induce a reasonable physician under the same circumstances to warn patients of the risks involved in treatment, a duty to notify arose. The fact the knowledge of the risk was obtained after the patient was treated does not alter the obligation. If the defendant fails to notify the patient when the risk becomes known, he has breached this duty.

Defendant Lilly has a continuing obligation as a manufacturer of drugs to warn of risks inherent in its drugs. *Schenebeck v. Sterling Drug, Inc.*, 423 F.2d 919, 922 (8th Cir. 1970). A claim based on a drug manufacturer's failure to warn may be premised on strict liability or negligence.

*See Restatement (Second) of Torts* § 388 and § 402A, Comments (1964). *Compare Basko v. Sterling Drug, Inc.*, 416 F.2d 417, 427 (2d Cir. 1969), *with Hamilton v. Hardy*, 549 P.2d 1099, 1106–07 (Colo.App.1976). Presumably, since plaintiffs have sought recovery in their second count on a theory of strict liability, this count is brought on a negligence claim. The breach, if any, thus occurred when the defendant Lilly learned, or should have learned, of the connection between DES and cancer, and failed to issue a warning revealing that risk.

In either case, to state a claim against either defendant, the plaintiffs must allege injury to themselves attributable to the breach of the duty to notify. The required injury differs from that in the previous counts in that this injury must be caused by the delay in notice, or failure to notify the plaintiffs in 1971—for example, aggravation of a prior injury, or increase in damage caused by the failure to seek treatment. However, the only injury alleged by the plaintiffs in this count is the increased risk of cancer to their children. This is insufficient to state a claim. There is no indication in the complaint that the plaintiffs were injured by the defendants' breach of their duty to notify. Injury to their children is, of course, not enough to support a claim for damage to the plaintiffs, nor is an increased risk unaccompanied by tangible physical injury. *Needham v. White Laboratories*, 76 C 1101 (N.D.Ill.1976); *Rheingold v. E. R. Squibb & Sons*, 74 Civ. 3420 (S.D.N.Y.1975). Due to the lack of any allegations of physical injury to the named plaintiffs caused by the defendants' breach of their duty to notify, the third cause of action must be dismissed for failure to state a claim.[10]

---

**9.** The plaintiffs also take issue with the University's failure to inform patients that they did not consent to taking DES and therefore might have a legal claim against the defendants. There is no duty in these circumstances to inform potential litigants of possible legal claims. Moreover, each patient should know whether or not she consented to DES treatment.

**10.** In their brief, plaintiffs claim the third count also states a claim for fraud or misrepresentation. The result would be the same under these theories of recovery. Failure to allege physical injury requires dismissal under these theories as well as in negligence claims. *See Restatement (Second) of Torts* §§ 310–311 (1964).

## Statute of Limitations

The University of Chicago further argues that any actionable claims are barred by laches or the Illinois statute of limitations. Since plaintiffs were unaware of the facts giving rise to their battery cause of action until late 1975 or 1976, it cannot be said that they were guilty of laches in filing this complaint in April of 1977. There are two possible statutes of limitation which might apply to the plaintiffs' first cause of action. Ill.Rev.Stat. ch. 83, § 15, provides actions for injury to the person shall be brought within two years after the cause of action accrued. This statute would apply in traditional battery cases. The alternative statute appears in Ill.Rev.Stat. ch. 83, § 22.1, and provides that actions against a physician or hospital arising out of patient care shall be brought within two years of the date the patient reasonably should have discovered the existence of the injury, but in no event more than four years after the date of the occurrence involved.

Whichever statute applies, the running of the limitations period may be tolled if the defendants fraudulently concealed the cause of action from the plaintiffs. Ill. Rev.Stat. ch. 83, § 23. Generally, this tolling provision requires more than mere silence on the part of the defendant. Some affirmative act of concealment is contemplated. See Gates Rubber Co. v. USM Corp., 508 F.2d 603, 615 (7th Cir. 1975). However, Illinois courts have indicated that in some circumstances, the requirement may be relaxed. Thus, in County of Cook v. Barrett, 36 Ill.App.3d 623, 344 N.E.2d 540 (1975), the court held that the failure to allege an overt act of concealment was not fatal to an action brought against a fiduciary. The court reasoned that the nature of the fiduciary relationship tended to preclude the beneficiary from discovering his fiduciary's misfeasance, and that it would contradict the substantive law of trusts to bar the action.

The plaintiffs in this action have alleged that the defendants intentionally and fraudulently concealed the circumstances of the experiment from 1950 until the present. This allegation demonstrates intentional concealment of known facts which in our opinion exceeds mere silence and approaches affirmative action. It is therefore sufficient to survive a motion to dismiss, and we reject the University's contention that the action should be barred as a matter of law.

## Charitable Immunity

The University of Chicago claims it is immune under the doctrine of charitable immunity from any actionable claims stated by plaintiffs. We agree with the plaintiffs that it would be premature to decide the question of charitable immunity at this point. Even if the doctrine were to be applied to this case, it would not afford the hospital immunity from suit. The protection goes only to the funds available for recovery if liability is found. Moore v. Moyle, 405 Ill. 555, 92 N.E.2d 81 (1950).

The University argues that the law of charitable immunity as it existed in the 1950's when the experiment was conducted is the proper doctrine to apply to their actions. This argument is premised on a passage in Darling v. Charleston Hospital, 33 Ill.2d 326, 211 N.E.2d 253 (1965), cert. denied, 383 U.S. 946, 86 S.Ct. 1204, 16 L.Ed.2d 209 (1966), the case which abolished the doctrine of charitable immunity in Illinois. The court in Darling stated that the decision was not to be applied retrospectively because charitable corporations would have relied on prior law as established in Moore v. Moyle, 92 N.E.2d 81 (1950), in deciding the extent of their insurance coverage.

Plaintiffs take the position that this case is strictly post-Darling and thus the retrospective limitation does not apply. We note at this time, without deciding the question, that the plaintiffs' position is not persuasive. Since the operative facts occurred in the 1950's, this case cannot be construed as strictly post-Darling. Therefore, it is possible, although we do not decide the question, that execution against the assets

of the University would be limited by *Moore v. Moyle*, 92 N.E.2d 81 (1950), to the insurance proceeds.

The parties have not fully explored the question, and as previously noted it is not ripe for resolution at this time. The University does not deny that it has insurance coverage and therefore we will assume that in the event there is a judgment for plaintiffs, there will be insurance proceeds to satisfy it. Accordingly, the University's motion to dismiss on the basis of charitable immunity is denied.

### Conclusion

The motions to dismiss of defendants University of Chicago and Eli Lilly & Co. are denied as to the plaintiffs' first cause of action. The first count states a claim for relief for battery and is not barred by the statute of limitations or the doctrine of charitable immunity. The defendants' motions to dismiss the second and third counts for failure to state a claim are granted.[11] Plaintiffs are given until April 7, 1978, to amend the second and third counts of their complaint.

## ON MOTION TO DISMISS AMENDED COMPLAINT

Plaintiffs have brought this diversity action on behalf of themselves and some 1,000 women who were given diethylstilbestrol ("DES") as part of a medical experiment conducted by the defendants, University of Chicago and Eli Lilly & Company, between September 29, 1950, and November 20, 1952. The drug was administered to plaintiffs during their prenatal care at the University's Lying-In Hospital as part of a double blind study to determine the value of DES in preventing miscarriages. Plaintiffs' complaint sought recovery on three causes of action. The first alleged that defendants committed a series of batteries by conducting a medical experiment on plaintiffs without their knowledge or consent. The second count was grounded in products lia-

bility and sought to recover damages from defendant Lilly premised on its manufacture of DES as a defective and unreasonably dangerous drug. Finally, plaintiffs alleged that defendants breached their duty to notify plaintiffs that they had been given DES while pregnant and that children born from that pregnancy should consult a medical specialist.

Defendants moved to dismiss the complaint. We denied their motion as to Count I, holding plaintiffs had stated a cause of action for battery. We granted the motion as to Counts II and III because of plaintiffs' failure to allege physical injury to themselves caused by defendants' actions. Plaintiffs filed an amended complaint. They allege that many class members have been physically injured as a result of the DES experiment, as many have developed breast or other endocrine-related cancer as a result of their ingestion of DES. They allege that defendants' failure to notify members of the plaintiff class has caused the death of some members. Defendants again move to dismiss Count II of the complaint on the grounds plaintiffs have not alleged injury to themselves. In their memorandum in opposition to the motion to dismiss, plaintiffs ask us to reconsider our ruling that the named plaintiffs must allege physical injury to themselves, and ask that we allow the named plaintiffs to recover damages on behalf of the class members who have suffered the physical injuries alleged.

Upon reconsideration, we must abide by our original decision. The Supreme Court has recently addressed the precise issue before us. In *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), the Court noted: "The individual respondents sought to maintain this suit as a class action on behalf of all persons similarly situated. That a suit may be a class action, however, adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege

---

11. Since we have dismissed the third cause of action for failure to state a claim, there is no point in ruling on the propriety of plaintiffs' request for injunctive relief under that count at this time.

and show that they personally have been injured, not that injury has been suffered by other. unidentified members of the class to which they belong and which they purport to represent.' *Warth v. Seldin,* 422 U.S. [490] at 502, 95 S.Ct. 2197, 45 L.Ed.2d 343." 426 U.S. at 40 n. 20, 96 S.Ct. at 1925. Thus, since plaintiffs have not alleged physical injury to themselves, we grant defendants' motion to dismiss Count II of the amended complaint.

Plaintiffs have abandoned all claims for damages under Count III because of their inability to allege personal physical injury. Now they seek injunctive relief on behalf of other class members who would be injured in the future if no relief were granted. They seek to compel the defendants to notify all the women given DES as part of the University experiment of the risks to them and their children and of recommended precautions. Plaintiffs admit that they themselves, already aware of the DES menace, have no need for further notice. Defendants move to dismiss on the grounds of mootness. Plaintiffs rely on *Franks v. Bowman Transportation Company,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). We find that reliance misplaced. That decision deals with whether a case or controversy still exists when, after a class is certified, a named plaintiff's case is mooted. The Court concluded that the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by the named plaintiff. Thus, even though the named plaintiff no longer was involved in a controversy, a sufficient adversary relationship between the class members and the defendant existed to guarantee "that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult . . . questions." *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

A plaintiff class has never been certified in this action. The proposed plaintiff class does not yet have a separate legal status. In a similar situation, where the named plaintiff's controversy had been mooted, yet no class had been certified, the Court dismissed the complaint. *Indianapolis School Comm'rs v. Jacobs,* 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975); *see also, Winokur v. Bell Federal Sav. & Loan Ass'n,* 560 F.2d 271 (7th Cir. 1977), *app. pending,* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 530 (1978). The progenitor of this line of cases, *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), however, recognized that the failure to certify a class is not necessarily fatal to the case. It noted that: "There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to 'relate back' to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review." *Id.* at 402 n. 11, 95 S.Ct. at 559. We question whether plaintiffs could place themselves within this exception. More basically, however, plaintiffs cannot show that they had a live controversy at the time the complaint was filed—another requirement articulated in *Sosna.* The named plaintiffs were aware of the dangers of DES at the time the complaint was filed, and thus, had no right to be warned.

It is somewhat anomalous to speak of this case being moot. In a sense, there has never been a case or controversy that could be mooted. "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Thus, we must dismiss Count III for failure to state a claim.

Defendants' motions to dismiss Counts II and III of the amended complaint are granted.