**Gladys PLUMMER, et al., Plaintiffs,**

**v.**

**ABBOTT LABORATORIES, et al., Defendants.**

**Civ. A. No. 80–0556–S.**

United States District Court, D. Rhode Island.

July 1, 1983.

Decof & Grimm by Leonard Decof, John S. Foley, Mark B. Decof, Peter J. Cerilli, Providence, R.I., for plaintiffs.

Rice, Dolan, Kiernan & Kershaw by John F. Dolan, Providence, R.I., for Burroughs Wellcome.

Hanson, Curran & Parks by Wm. A. Curran, Dennis J. McCarten, Providence, R.I.,

Robt. L. Dickson, Santa Monica, Cal., for E.L. Squibb.

Goodwin, Proctor & Hoar by Marshall Simonds, Anthony Feeherry and Martha Coakley, Boston, Mass., Edwards & Angell by Richard A. Borod, Providence, R.I., for Eli Lilly & Co.

Roberts, Carroll, Feldstein & Tucker by Bruce G. Tucker, Providence, R.I., for Upjohn.

E. Erik Lund, David J. Hatem, Boston, Mass., James J. McKenna, Providence, R.I., for Schering.

Gunning, LaFazia & Gnys by Edward L. Gnys and R. Alan LaFazia, Providence, R.I., for Abbott.

Hinckley & Allen by Thomas D. Gidley, Providence, R.I., for Merck.

## OPINION AND ORDER

SELYA, District Judge.

This is a products liability action initiated by 51 individual plaintiffs against 7 manufacturers of the drug diethylstilbestrol ("DES"). Jurisdiction is based on 28 U.S.C. § 1332. Of the original plaintiffs, 48 remain in the case; 21 are women who, during their respective pregnancies, took DES on the advice of their physicians. These women, in the fourth amended complaint, complain of emotional distress arising out of increased fear of contracting cancer and out of heightened concern for the current or future medical problems of their respective daughters. After extensive discovery, all defendants now seek summary judgment against 16 of the 21 aforementioned women (these targets of the summary judgment initiative being identified in the margin).[1] The gravamen of the defendants' motion is that Rhode Island does not and would not recognize a cause of action for negligent infliction of emotional harm in the absence of physical manifestations of such distress. The targeted plaintiffs have objected. The matter has been fulsomely briefed; and at a chambers conference held on May 9, 1983, all parties waived oral argument and declined the court's invitation to consider certification of the questions raised to the state supreme court.

The facts are not in dispute and can be summarized succinctly.[2] The targeted plaintiffs ingested DES during their respective pregnancies; they do not contend, however, that they have sustained any physical harm or that they have manifested physical sequelae of any emotional distress. The targeted plaintiffs claim as injuries only the following: (i) increased risk of contracting cancer and concomitant mental strain as a side effect of trepidation associated therewith; and/or (ii) mental distress ancillary to fear and concern as to their children's current and possible future medical problems.

This court, sitting in diversity jurisdiction, must determine whether the enumerated facts combine to state a cause of action for negligent infliction of emotional distress under Rhode Island law. *Scuncio Motors, Inc. v. Subaru of New England, Inc.*, 555 F.Supp. 1121, 1124 (D.R.I.1982). Since there are no Rhode Island cases directly on point, it is this court's task to vaticinate what the decision of the Rhode

---

1. The sixteen are: Norma Anthony, Mary Jane Baker, Ann Marie Brander, Louise Elias, Mary Finger, Patricia Foley, Doris Fortune, Annette Hassell, Jean Lehmann, Rose Levin, Norma Marcaccio, Gladys Plummer, Doris Ramsay, Anna Saccoccia, Tamah Sadick, and Betty Steffens. These plaintiffs, collectively, are hereinafter referred to as the "targeted plaintiffs". The seven drug manufacturers are: Eli Lilly and Co., Abbott Laboratories, Merck, Sharp & Dohme, Schering Corp., E.L. Squibb & Sons, Inc., The Upjohn Co., and Burroughs Wellcome Co.

2. Local Rule 12.1(a)(1) requires a party seeking to invoke the prophylaxsis of Fed.R.Civ.P. 56 to file a statement of facts as to which no genuine issue exists. The defendants have complied with this adjuration. Local Rule 12.1(a)(2) requires the party opposing the motion for summary judgment to file a statement of facts as to which controversy exists. Since the targeted plaintiffs have not filed such a counter-statement, the court deems the plaintiffs to have admitted the facts as set forth in the movants' statement of undisputed facts. *Jerome I. Silverman, Inc. v. Lloyd's Underwriters*, 422 F.Supp. 89, 91 (S.D.N.Y.1976); *Fox v. Washington*, 396 F.Supp. 504, 505 n. 2 (D.D.C.1975).

Island Supreme Court would be were that court faced with the issue. *Id. See also Nature Conservancy v. Machipongo Club, Inc.,* 579 F.2d 873, 875 (4th Cir.), *cert. denied,* 439 U.S. 1047, 99 S.Ct. 724, 58 L.Ed.2d 706 (1978); *Oresman v. G.D. Searle & Co.,* 321 F.Supp. 449, 453 (D.R.I.1971). In undertaking this forecast, the court must look to relevant, i.e., analogous, state court decisions, 19 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure,* § 4507, at ·91 (1982), and may assay sister state adjudications of the issue. *Murphy v. Erwin-Wasey, Inc.,* 460 F.2d 661, 663 (1st Cir.1972). Once the law is divined in accordance with these principles, the court must apply conventional summary judgment standards to the pending Rule 56 motion; and must satisfy itself as to whether or not the movants have demonstrated entitlement to judgment as a matter of law. *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976); *United Nuclear Corp. v. Cannon,* 553 F.Supp. 1220, 1226 (D.R.I.1982). The court is persuaded that this case is ripe for *brevis* disposition as to the targeted plaintiffs.

■ The defendants' attack is on two fronts. The first salvo contends that the alleged presence of a heightened risk of contracting cancer does not, in and of itself, support or state a viable cause of action under Rhode Island law. This volley is well-placed. It is an abecedarian principle of tort law that an individual must be injured to recover for the negligent acts of another. *See, e.g., Mullaney v. Goldman,* 398 A.2d 1133, 1136 (R.I.1979); *Phelps v. Burrillville Racing Association,* 73 R.I. 84, 53 A.2d 753, 754 (1947). With this thesis in mind, the court in *Mink v. University of Chicago,* 460 F.Supp. 713 (N.D.Ill.1978) rejected a claim indistinguishable from that advanced by the plaintiffs in the instant case. *Id.* at 719. The court reasoned that the possibility that an individual may, because of the ingestion of certain drugs,

have acquired a greater risk of contracting cancer does not *per se* constitute injury for purposes of tort law. *Id.* It cannot seriously be doubted that, given Rhode Island's unswerving adherence to the underlying principle, the Rhode Island Supreme Court, if faced with the issue, would follow the holding of *Mink. See also Sioux City Community School District v. International Telephone & Telegraph Corp.,* 461 F.Supp. 662, 664–65 (N.D.Iowa 1978); *Rheingold v. E.R. Squibb & Sons,* No. 74 Civ. 3420 (S.D.N.Y. 1975).[3] Therefore, this court concludes that only the claim for psychic harm alleges a fact pattern which, under Rhode Island law, requires in-depth perscrutation.

The defendants' second fusillade is aimed at establishing that the holding in *D'Ambra v. United States,* 114 R.I. 643, 338 A.2d 524 (1975) ("*D'Ambra III*") forecloses recovery for negligent infliction of emotional distress in the absence of some corporal manifestation of such affliction. The targeted plaintiffs counter with a bi-dimensional riposte.

First, the plaintiffs reason that since Rhode Island allows, as an element of damages, recovery for pain and suffering, it necessarily follows · that the state courts would permit recovery for a *cause of action* solely based on anxiety and dread without the need for a parallel showing of objective symptomatology. This contention is devoid of merit.

■ There is a vast gulf between sanctioning the use of an element of intangible damages arising ancillary to physical harm to compensate an individual for injuries resulting from the commission of an admittedly tortious action and the imposition of tort liability on a party *ab initio* for the negligent infliction of dread and anxiety alone. Tort damages are awarded in order fully and adequately to compensate an individual for injuries sustained. *Auchincloss v. Halloran Construction Co.,* 105 R.I. 565, 253 A.2d 622, 625 (1969); *DeSpirito v. Bris-*

---

**3.** There may, nevertheless, be some relevance which attaches to the allegations of increased risk, insofar as such enhancement may lead to fear which exhibits itself as actionable emotional distress. But, the key question remains: are the claims for emotional harm, given the facts of the case, actionable?

*tol County Water Co.,* 102 R.I. 50, 227 A.2d 782, 784 (1967). Thus, the underlying basis for such damages is the premise that the individual was injured in contemplation of law. The concept of injury, however, at least in the area of tort law, involves the breach of some duty and the imposition of liability for that breach. *See Phelps v. Burrillville Racing Association,* 53 A.2d at 754. Therefore, the plaintiffs' argument in this regard begs the fundamental question of whether liability should be imposed for the actions of the defendants. To allow this suit to go forward based on nothing more than the hypothesis that pain and suffering is an element of recovery in a proper case would be judicially to embrace an exquisite example of hoisting oneself by one's own bootstraps.

The second prong of the demurrer to the defendants' motion strikes to the heart of the matter and directly addresses the issue of imposing liability for negligent infliction of emotional distress. The targeted plaintiffs contend that Rhode Island, as a leader in the development of neoteric tort law, would follow what the plaintiffs perceive to be a newly-emergent trend permitting recovery for careless infliction of emotional strain notwithstanding the absence of corresponding physical manifestations thereof.

Since the seminal case in any reasoned discussion of the issue at bar is *D'Ambra III,* an exegesis of the history of that litigation is helpful. Suit was originally brought in this court under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), for the wrongful death of Gregory D'Ambra, (a minor), arising out of a vehicular accident, an event witnessed by Gregory's mother, Constance D'Ambra. The government was adjudged negligent, and both the decedent and Mrs. D'Ambra were found to have been in the exercise of due care. *D'Ambra v. United States,* C.A. No. 4545 (D.R.I., March 17, 1972) (Pettine, J.), *affirmed* 481 F.2d 14 (1st Cir.), *cert. denied,* 414 U.S. 1075, 94 S.Ct. 592, 38 L.Ed.2d 482 (1973) (*"D'Ambra I"*). The district court then turned to a companion action brought for the shock suffered by Mrs. D'Ambra in consequence of witnessing the fatality. The government moved to dismiss this claim on the ground that Rhode Island would not recognize a cause of action for negligent infliction of emotional harm when the plaintiff had not, herself, been within the zone of danger (a fact established in *D'Ambra I*). The district court denied the motion in a thoughtful and well-reasoned written opinion, *D'Ambra v. United States,* 354 F.Supp. 810 (D.R.I.1973) (*"D'Ambra II"*) and the defendant appealed. The First Circuit then certified the following question to the Rhode Island Supreme Court:

> May a non-negligent plaintiff mother, who is foreseeably in the vicinity of her minor child but not in the child's zone of danger, recover damages for mental and emotional harm, accompanied by physical symptoms, caused by observing the death of her child resulting exclusively from the negligence of defendant in driving the truck which struck the child, although she suffered no physical impact?

In response to this certified question, the state supreme court held that such a plaintiff could recover, *D'Ambra III,* 338 A.2d at 531, and the court answered the certified question in the affirmative. *Id.*

*D'Ambra III* announced a trio of factors which a plaintiff would have to prove in order to recover for negligent infliction of emotional distress, relying, as had the district court in *D'Ambra II,* in large part on *Dillon v. Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912, 920 (1968). These guidelines are: (i) a close relationship between the party witnessing the incident and the injured party; (ii) physical proximity to the incident; and (iii) the actual witnessing of the incident. *D'Ambra III,* 338 A.2d at 531. It would appear at first blush that the targeted plaintiffs have, for purposes of this motion, met the first two prongs of the test. But, appearances can be deceiving; and there are caveats apposite even to those aspects.

As to each of the claims at bar, either a mother-and-daughter relationship exists, or the plaintiff herself is held out to be the injured party. Yet, having in mind the lack

of physical symptomatology on the part of the mother in each instance, and as to the daughters in many instances, such a facile conclusion may indeed beg the question: there may well be, *de jure,* no injured party. If Rhode Island hews to the corporal manifestation rule, these cases may well illustrate a modern example of the *damnum absque injuria* maxim.

Secondly, proximity to the incident is difficult to assess. In a sense, these plaintiffs were directly involved as the very instrumentalities by which DES was ingested and transmitted, and seem, therefore, to have a sufficient nexus with the events. They are in as close "proximity" as scientific discipline permits. But, therein lies the rub: the "incident" must be more than mere intromission, *see* text *post,* and the problems of enswathing even a ductile concept of "incident" within the ill-fitting integument of the alien concept of proximity (itself poorly suited for application to indirect medication liability cases such as this) are monumental.

The court need not embark upon these metaphysical excursions, however, as the third factor of the *D'Ambra III* triad is more susceptible to judicial scrutiny as applied to this anomalous fact pattern.

*D'Ambra III* represents a cautious and limited departure from earlier Rhode Island cases. The historical backdrop against which *D'Ambra III* was played out is, therefore, of interest. In *McGarr v. National & Providence Worsted Mills,* 24 R.I. 447, 53 A. 320 (1902), the state supreme court held that a parent could not recover for suffering attendant to a child's negligently inflicted injury. Some five years hence, the court allowed recovery for emotional distress, but in a case where the plaintiff herself was in actual danger of grave physical injury. *Simone v. Rhode Island Co.,* 28 R.I. 186, 66 A. 202 (1907). A half-century later, dicta is to be found in *Bedard v. Notre Dame Hospital,* 89 R.I. 195, 151 A.2d 690 (1959), to the effect that "a parent is not entitled to recover for mental distress and anxiety on account of an injury to his child unless the injury is a willful or malicious one". 151 A.2d at 692.

Those rulings set the stage for *D'Ambra II,* wherein Judge Pettine held that, even though the plaintiff was herself outside the "zone of danger", public policy did not justify "the preclusion of the cause of action for the negligent infliction of mental harm on a bystander parent". 354 F.Supp. at 822. In *D'Ambra III,* however, Justice Doris, writing for the majority of a divided court, rejected a strict foreseeability test, *but see id.* at 531–34 (Kelleher, J., concurring), and adhered instead to a balancing of policy considerations which, in sum, tipped the scales in favor of allowing recovery on the idiosyncratic facts of that case. The state supreme court relied heavily on the fact that Mrs. D'Ambra, while herself not within the path of the negligently-operated truck, was indeed an eye-witness to the accident and to its horrific consequences. *See, e.g., id.* at 529, 530, 531. It viewed the "relaxation of the zone of danger limitation" adopted there as "the exception and not the rule." *Id.* at 531. Justice Joslin, in a cogent and forceful dissent, characterized the majority holding as a "result-oriented response", *id.* at 535, and observed:

> Today's decision, as the majority suggest, can be viewed plausibly as a narrow exception limited factually to the case of a nonnegligent mother who, although outside the zone of physical danger, is not far distant when she observes an accident that causes the death of her young child.

*Id.*

In the case at bar, there was no episodic single incident to be witnessed; there was merely the insidious development—or, as to many of the targeted plaintiffs, only the threatened development—of a disease process. The targeted plaintiffs' attempt to use *D'Ambra III* as a wedge in the door, and to expand the *D'Ambra* pinhole into a yawning chasm. They seek, in short, to make the exception the rule. But, such a bold effraction cannot logically be justified. Whereas *D'Ambra III* dealt with on-the-spot observation of a finite moment in time, the instant claims deal with psychic trauma

arising from entropic events of indefinite duration and infinite expanse. The policy considerations—social, economic and administrative—are largely dissimilar. If the targeted plaintiffs are permitted to pursue their causes of action, then the lid is lifted from Pandora's jar[4] and there will be few—if any—cases in which a relative (or a sweetheart or close friend, for that matter) will be barred from prosecuting a claim for emotional distress arising out of injuries to another. This court does not believe that the reach of *D'Ambra III* is so far-flung.

This conclusion is buttressed by the Rhode Island Supreme Court's failure to extend the holding of *D'Ambra III* to claimants who hear about, but do not witness, the occurrence of an injury. In *Caparco v. Lambert,* 402 A.2d 1180 (R.I.1979), the plaintiffs sued for negligent infliction of emotional distress arising out of physical injuries incurred by their daughter. The superior court dismissed, on the authority of *D'Ambra III.* The supreme court affirmed, holding that parties who did not witness an accident are not entitled to recover for such emotional distress. 402 A.2d at 1181–82. *Caparco* evidences an unmistakable intent on the part of the Rhode Island Supreme Court to limit recovery to instances of great and immediate "shock value."

To be sure, a parent who is informed that a child has been severely injured will understandably be distraught; but there is a significant difference between witnessing an event and hearing about it after the fact. And, as *Caparco* teaches, the observation of the accident's sequelae after the fact is not sufficient to bring a case under the *D'Ambra III* umbrella. There is, in this court's judgment, scant distinction between learning of a serious injury second-hand, and thereafter observing its effects (the *Caparco* scenario), and observing and/or worrying about either the actor's or a child's actual or potential medical problems (the case at bar). In either instance, the trauma of the moment is dissipated by space and time to such an extent that tort law should not permit recovery. This court concludes that, for the reasons indicated, the Rhode Island Supreme Court would as a matter of prudential jurisprudence hold that the targeted plaintiffs have not stated a claim for relief based upon negligent infliction of emotional distress.

There is, as well, a second—and equally compelling—ground upon which the pending motion must be granted. The Rhode Island Supreme Court would not, based upon its established precedents, permit recovery for emotional distress without the accompaniment of physical symptomatology.

As has already been noted, the state supreme court has not demonstrated any predilection to expand the sweep of *D'Ambra III* beyond the fact pattern of that case. In *Caparco v. Lambert, supra,* the court had the opportunity to take a further step and to vitiate the eyewitness requirement. It did not, *id.* at 1181–82; and therefore, this court has little reason to believe that it would do so if faced with other attempts materially to loosen the strictures of *D'Ambra III.* One of these constringencies is, of course, the requirement that the plaintiffs exhibit some physical manifestation of the asserted emotional distress. *D'Ambra III,* 338 A.2d at 531.

That the Rhode Island Supreme Court still deems the physical symptomatology criterion meaningful is further demonstrated by *Seitz v. L & R Industries, Inc.,* 437 A.2d 1345 (R.I.1981). In *Seitz,* an employer appealed from a decision by the workers' compensation commission awarding an employee compensation benefits resulting from psychological strain arising out of her difficult employment relations with her coworkers and her employer. The court classified

---

4. While the more common allusion is to "Pandora's box", it is apparently an erroneous one. Zeus, determined to avenge himself on Prometheus, presented this *femme fatale* to Epimethus (Prometheus' brother), first arming her with a jar containing all the evils of the world. After Epimethus foolishly accepted the gift, Pandora proceeded to open the jar, thereby loosing a full panoply of torments upon humanity. *See* R. Warner, *Encyclopedia of World Mythology,* 29–30 (1975).

psychic injuries into three striations: (i) physical injury which leads to psychic damage; (ii) psychic injury which causes physical damage; and (iii) psychic injury which is neither caused by some physical impact nor which results in some sort of physical injury. *Id.* at 1347. The court concluded that Ms. Seitz's claims fell into the third sub-category.

Despite the remedial nature of workmen's compensation and the liberal construction accorded to the statutory scheme, *McCormick v. Ice Cream Machine Co.,* 442 A.2d 433, 435 (R.I.1982); *Fontaine v. Caldarone,* 412 A.2d 243, 245 (R.I.1980), the state supreme court held that personal injuries falling into the third sub-category, such as Seitz's, were not compensable under the statute. *Seitz v. L & R Industries, Inc.,* 437 A.2d at 1352. Although *Seitz* dealt with a statutory rubric and not with a common law tort claim, its logic applies *ex proprio vigore* to the case at bar. The policy considerations are, of course, much weaker for the targeted plaintiffs, for there is no requirement that tort law be given a liberal construction. In fact, *Caparco v. Lambert, supra,* demonstrates beyond cavil that Rhode Island shies away from precipitous expansion of its common law especially when dealing with the negligent infliction of emotional distress. If the Rhode Island courts do not view with favor compensation for mental harm without concomitant physical injury in workers' compensation cases, it is improbable that a more beneficient treatment would be accorded to the same genre of harm in an area of law where policy considerations militate more strongly against opening the floodgates.

*Seitz* is also instructive in its expression of weighty reservations anent the combined ability of the psychiatric profession and of the adversary system to distinguish between genuine and feigned claims for mental injury. *Seitz v. L & R Industries, Inc.,* 437 A.2d at 1349–50. These misgivings are equally on point in the assessment of third-party claims. The courts are no better equipped than the workers' compensation commission to sort out a barrage of suits which have glossy covers, but which may well be meritless in fact; and the state court's doubts as to the Delphic powers of the commission foretell its response to the same question when postulated in the mantle of a common law claim for personal injuries.[5]

Finally, the vast majority of Rhode Island's sister jurisdictions require that a plaintiff exhibit some physical manifestation of mental distress in order to prosecute a negligence action. *Payton v. Abbott Labs,* 386 Mass. 540, 437 N.E.2d 171, 175 n. 5 (1982) (collecting cases); *accord Sypert v. United States,* 559 F.Supp. 546, 548 (D.D.C. 1983) (applying Virginia law); *Avallone v. Wilmington Medical Center, Inc.,* 553 F.Supp. 931, 938 (D.Del.1982) (applying Delaware law); *Barnhill v. Davis,* 300 N.W.2d 104, 107–08 (Iowa 1981); *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672, 683 (1979) (construed in *Banyas v. Lower Bucks Hospital,* 293 Pa.Super. 122, 437 A.2d 1236, 1239–40 (1981) as requiring physical manifestation). In a number of areas of tort law, the Rhode Island Supreme Court has shown a willingness to adopt the majority approach. *See, e.g., Ritter v. Narragansett Electric Co.,* 109 R.I. 176, 283 A.2d 255, 263 (1971); *Wilkinson v. Harrington,* 104 R.I. 224, 243 A.2d 745, 751 (1968). There is no valid reason to believe that the state supreme court, especially given its prior pronouncements in re-

---

5. At the instance and request of the targeted plaintiffs, decision on this motion was withheld in order that the results of the Rhode Island General Assembly's, consideration of H.R. 83 H–5345 Sub. A might be known. That bill would have arguably—had it become law— eradicated the physical manifestation requirement. It failed of passage in the 1983 legislative session (now concluded). This is the type of "positive inaction", *see Flood v. Kuhn,* 407 U.S. 258, 283, 92 S.Ct. 2099, 2112, 32 L.Ed.2d 728 (1972), which assists a court in divining that the legislature recognized the limitations of *D'Ambra III* and "clearly evinced a desire not to disapprove them legislatively." *Id.* at 284, 92 S.Ct. at 2112. The Rhode Island Supreme Court has frequently looked to such legislative acquiescence as a guidepost in the reaffirmation of its prior decisional law. *See, e.g., Henry v. John W. Eshelman & Sons,* 99 R.I. 518, 209 A.2d 46, 48 (1965).

lated matters, would not once again align itself with the overwhelming weight of authority across the nation.

Thus, the classic indicators all point toward the same conclusion. The decided Rhode Island cases, the inaction of the General Assembly when confronted with an opportunity to alter the legal landscape, the substantial bulk of authority elsewhere, and the absence of the agglomeration of policy considerations limned in *D'Ambra III* severally and in the aggregate label the claims of these suitors insufficient as a matter of Rhode Island law. And, while a district court may, in passing upon state law questions, take account of perceptible trends in the law, *see, e.g., Provencher v. Berman,* 699 F.2d 568, 570 (1st Cir.1983); *Mason v. American Emery Wheel Works,* 241 F.2d 906, 909 (1st Cir.), *cert. denied,* 355 U.S. 815, 78 S.Ct. 17, 2 L.Ed.2d 32 (1957), no such tide is running here. While there has been, admittedly, some ebb and flow in other jurisdictions, *compare Culbert v. Sampson's Supermarkets, Inc.,* 444 A.2d 433, 437–38 (Me.1982) *with Wallace v. Coca-Cola Bottling Plants, Inc.,* 269 A.2d 117, 121 (Me. 1970), the wave of modern jurisprudence still crests upon the tenet that psychic trauma is not actionable where, as here, both impact and physical manifestations of the asserted emotional harm are absent.

█ It is not for this court, sitting in diversity jurisdiction, to blaze a new trail where the footprints of the state courts point conspicuously in a contrary direction. In such a situation, a federal court must take state law as it exists: not as it might conceivably be, some day; nor even as it should be. And, once state law has been divined, this court must proceed to interpret and apply that law according to its tenor. *Cantwell v. University of Massachusetts,* 551 F.2d 879, 880 (1st Cir.1977). If the result is harsh,[6] change must be wrought by either the judicial or legislative branch of state government, so long as the Constitution and/or federal statutes are not impli-

cated. Plaintiffs who seek out a federal forum in a diversity action should anticipate no more.

Since this court is of the opinion that the claims of the targeted plaintiffs would not be entertained in the courts of the state, this motion for summary judgment must be granted as to each and all of them. The remaining plaintiffs shall forthwith file a conformed fourth amended complaint limited to their claims, and each defendant shall, within ten days of the filing thereof, answer or otherwise respond.

SO ORDERED.

---

**6.** No suggestion should inhere that this court visualizes the result reached here as unfair or unjust. As noted in the text, prudential consid-

erations and the heft of respectable authority converge to support the conclusion that these claims are not actionable.