Margaret TAYLOR, et al.,
Plaintiffs, Appellants,

v.

AETNA CASUALTY & SURETY
COMPANY, Defendant,
Appellee.

No. 88–1726.

United States Court of Appeals,
First Circuit.

Heard Jan. 9, 1989.

Jan. 23, 1989.

Mark D. Shuman, Boston, Mass., for plaintiffs, appellants.

David O. Brink with whom Gallagher & Gallagher, P.C., Boston, Mass., was on brief for defendant, appellee.

* Of the District of Rhode Island, sitting by desig-

Before BOWNES and SELYA, Circuit Judges and PETTINE,* Senior District Judge.

PER CURIAM.

Aetna Casualty & Surety Company (Aetna) issued a policy of automobile insurance to William and Margaret Taylor, husband and wife. The policy was issued subject to the laws of, and delivered in, Rhode Island. During the currency of the policy, Mrs. Taylor was severely injured in a traffic accident caused by the negligence of one Joseph P. Dacri. Dacri was insured only to the extent of $5,000, a figure well below Rhode Island's financial responsibility threshold. *See* R.I.Gen.Laws § 31–31–7 (1982 & Supp.1988). Dacri was, therefore, an "underinsured" driver, a circumstance sufficient to bring into play the provisions of the uninsured motorist (UM) coverage of Aetna's policy. *See generally Pickering v. American Employers Ins. Co.*, 109 R.I. 143, 282 A.2d 584, 587 (1971).

Mrs. Taylor, with Aetna's acquiescence, collected $5,000 from Dacri's insurer, and made claim against Aetna under the UM coverage. That coverage was written subject to "per person" and "per accident" limits of liability of $25,000/$50,000, respectively. Aetna paid Mrs. Taylor $25,000 under the UM coverage, but balked at exceeding the "per person" limit. Plaintiffs contended that since their policy with Aetna covered *two* automobiles, and the total premium paid for UM coverage had been computed by adding separate charges referable to each vehicle, they were entitled to "stack" the limits to allow Mrs. Taylor to receive $50,000, *i.e.*, $25,000 (the stipulated "per person" limit) × 2 (the number of covered autos). The district court rebuffed this contention and granted summary judgment in Aetna's favor. *Taylor v. Aetna*, Civ. No. 86–1523–WF, *ore tenus* decision (D. Mass. May 25, 1988). We affirm.

▮ The parties agree that Rhode Island law controls in this diversity case. The critical provision of the insurance policy,

nation.

specifying the limits of liability applicable under the UM coverage, reads as follows:

## LIMIT OF LIABILITY

The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of covered persons, claims made, vehicles or premiums shown in the Declarations, or vehicles involved in the accident.

Plaintiffs' argument, in a nutshell, is that:

The ambiguity upon which plaintiffs rely as entitling them to "stack" the uninsured motorist coverages in effect on each vehicle may be found in the "limit of Liability" provision drafted by Aetna. In that provision, the word "limit" is used in its singular form twice within the body of the provision itself, the singular form of the word "limit" also appearing in the caption to the provision. The question thus presented is: Bearing in mind that the Rhode Island statute concerning compulsory uninsured motorist benefits mandates two "limits" regarding uninsured motorist coverage, a $25,000.00 [per person] "limit" and a $50,000.00 [per accident] "limit" ..., to which "limit" does the word "limit" as used in the uninsured motorist provision refer?

Appellants' Brief at 11–12.

We give counsel high marks for ingenuity, but we decline to enter into an essentially metaphysical debate. Regardless of how many angels could dance on the head of this elegantly-contrived pin, we perceive no cognizable ambiguity in the policy itself, taken as a whole and in realistic context. Language used in an insurance contract must be given its plain, ordinary, and usual meaning. *Gleason v. Merchants Mut. Ins. Co.*, 589 F.Supp. 1474, 1480 (D.R.I.1984) (applying Rhode Island law); *Bush v. Nationwide Mut. Ins. Co.*, 448 A.2d 782, 784 (R.I.1982); *McGowan v. Connecticut General Life Ins. Co.*, 110 R.I. 17, 289 A.2d 428, 429 (1972). "Courts should refrain from conjuring up ambiguities when none exist.... [and] must abjure unnecessary mental gymnastics which give the terms of the policy a forced or distorted construction." *Gleason*, 589 F.Supp. at 1480–81 (citations omitted). These principles are fully apposite in this case.

What is more, the Rhode Island Supreme Court, confronted with the identical policy language and statutory mosaic, has termed the quoted phraseology "completely free of ambiguity...." *Constant v. Amica Mut. Ins. Co.*, 497 A.2d 343, 345 (R.I.1985). In so doing, the court rejected the attempt to extend the reasoning of *Taft v. Cerwonka*, 433 A.2d 215 (R.I.1981)—an attempt which the instant plaintiffs resurrect. Because *Constant* is close on point, and represents the latest, most authoritative exposition of relevant state law, we must be guided by it. We therefore conclude that the unambiguous meaning of the provision at issue, as applied to the facts of this case, requires that Aetna's liability on account of Mrs. Taylor's injury be limited to $25,000.

■ We need go no further. Plaintiffs invoked the district court's diversity jurisdiction and chose a federal forum to litigate this state-law claim. "It is not for [a federal] court, sitting in diversity jurisdiction, to blaze a new trail where the footprints of the state courts point conspicuously in a contrary direction." *Plummer v. Abbott Laboratories*, 568 F.Supp. 920, 927 (D.R.I. 1983). Claimants who search out a federal forum in diversity cases should anticipate nothing different. *Cf. Freeman v. Package Machinery Co.*, 865 F.2d 1331 at 1349 (1st Cir.1988) ("A defendant who chooses to remove a case from a state forum to a federal one is hard put to complain if the federal court follows state practice in regard to state-law claims contained in the complaint.").

AFFIRMED.