253 A.2d 622.

HUGH D. AUCHINCLOSS *vs.* HALLORAN CONSTRUCTION CO. OF RHODE ISLAND.

MAY 21, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. This is a civil action to recover damages for the destruction of a windmill by a fire caused by the defendant's negligence. The cause was heard before a justice of the superior court sitting without a jury and resulted in a decision for the plaintiff in the amount of $1,212 plus interest and costs. The case is before this court on the plaintiff's appeal from the judgment entered on the basis of the trial justice's decision. The grounds of the appeal are that the trial justice committed prejudicial error in excluding certain testimony and that he erred in finding that the plaintiff failed to prove the value of the windmill at the time of the loss by a fair preponderance of the evidence.

The pertinent facts follow. On October 27, 1965, plaintiff was the owner of a large estate in the city of Newport known as "Hammersmith Farm." Among the various buildings on the estate was a wooden windmill which was about 100 years old. Prior to the installation of the Newport water system, the windmill was used to pump and store water for the estate and for a certain period of time there-

after it was used as an emergency water system. Long before October 27, 1965, the structure had ceased to be used as a windmill. All of the machinery, including the electric pump which had been used to pump water, had been removed from the building and it was no longer serving as a reservoir for water or as an auxiliary water system.

The plaintiff desired to move the windmill from its existing foundation to another location approximately one quarter of a mile from its original site. He planned to put the windmill in a state of good repair on a new foundation, to erect an addition to it when it was removed to its new location, to provide suites of rooms for his guests in the addition, and to install an elevator. He hired Mrs. Anna M. Tillinghast of Portsmouth, a landscape architect and architectural designer, to draw the plans and make arrangements for the repair, removal and relocation of the windmill. As the agent for the plaintiff she hired Alfred P. Venancio, a general contractor, to do certain work to prepare the structure for removal to the new site. Mr. Venancio testified that it needed a few sills and some reshingling, and he estimated that it would cost approximately $1,500 to put the building in reasonably good condition. In accordance with plaintiff's directions he did certain repair work on the building to prepare the building for moving, but he never completed the work.

Mrs. Tillinghast also entered into a contract with defendant agreeing to pay defendant the sum of $2,300 for removing the wind vane, shafting and I-beams under the water tank, jacking up the building so that another contractor could replace necessary timbers preparatory to the moving of the building, moving the building to the new location, and placing the building upon a foundation to be erected by another contractor. The contract included an express agreement by defendant "* * * to properly safeguard the windmill building from any damage to the same

in moving it and to pay the cost of repairing any damage that may result to the building while being moved and placed on said foundation."

On October 27, 1965, while defendant's employees were burning some piping inside the windmill with an acetylene torch, a fire broke out which totally destroyed the windmill. As a result of the fire plaintiff brought the present action claiming that the fire was caused by the negligence of defendant's employees and that as a result thereof he sustained money damages.

At the hearing in the superior court plaintiff presented evidence that, although the windmill was somewhat weatherworn, at the time of the fire it was basically still a sound structure; that it would have cost approximately $1,500 to put the building in a state of good repair by replacing certain sills that had decayed and by replacing missing shingles; that, in addition to the age of the building, it was a significant part of the family heritage and of great value to the owner and to the public in general; that it was the symbol of the estate and was depicted on the iron gates of the entranceway to the estate; that it was used by the family and others as a subject of paintings and was mentioned in several publications dealing with the history of Newport; and that it was used as a navigational aid to seamen and navigators entering Newport Harbor and was even depicted on their charts.

Mr. Venancio testified in substance as follows. After the fire he gave an estimate for the cost of constructing a new mill. His cost estimate was $18,125 for framing and boarding the structure, $4,475 for the new foundation in the new location, and $5,000 for shingling and window framing. He worked from plans given him by Mrs. Tillinghast, which were the original plans of the old mill. He received payment of those amounts from plaintiff as well as $860 for the work he performed in preparing the building for re-

moval prior to the fire and $352 to remove the debris after the fire. Aside from his statement that he worked off the plans of the old building, there is nothing in his testimony showing that the new building was the same size as the old one, but his testimony does show that the new structure was erected for occupancy by human beings and that it included certain features not possessed by the old windmill.

Mrs. Tillinghast testified for plaintiff. Her testimony, insofar as here pertinent, follows. She had the original plans of the old building which plaintiff had turned over to her. She had engaged Mr. Venancio to erect the new foundation. She gave the dimensions of the old building but admitted in cross-examination that these figures were only her estimates. She gave Mr. Venancio the original construction drawings of the mill and asked him to give her an estimate. He gave an estimate of $22,650 which was for reproducing the old mill "To the extent that the old mill existed." This estimate did not include everything that was in the old building, such as the shingles and the windows. Rather, it was to be framed and boarded. The additional cost for the windows and the shingles was $5,000. Mrs. Tillinghast obtained another estimate from one William Singleton. His estimate according to Mrs. Tillinghast was $22,000 to reconstruct the old mill for framing and boarding, exclusive of the shingling and windows. She also stated that the new mill was bigger than the old one.

We note here that there was no other testimony from any other witness as to the dimensions of the old building or the new building. Mrs. Tillinghast's testimony with respect to measurements was based solely on her estimates and on her recollection from her memory of the plans. She stated she did not have the plans of the old mill in court, that she had been looking for them, and had not come across them. The plaintiff presented no evidence on the question of depreciation.

The plaintiff claims he is entitled to $21,675 plus the $860 expended for the preparatory work and $352 expended for the cost of removing the debris. He arrives at this figure in the following manner. The price of reproduction of the building was $22,650 for framing and boarding of the structure plus $5,000 for shingling and windows. Included in this figure was the cost of a foundation which was not damaged by fire. That amount was $4,475. By deducting from the total of $27,650 the cost of the foundation and $1,500, which was the cost of putting the building in good repair, plaintiff arrived at the figure of $21,675.

After the hearing the trial justice rendered a decision wherein he found that the fire was caused by defendant's negligence and that consequently plaintiff was entitled to recover damages from defendant. He reviewed the evidence with particular reference to the testimony of Mr. Venancio and Mrs. Tillinghast. He also referred to plaintiff's exhibit No. 2, the specification setting forth the work that was to be done in preparing the building for removal to the new location. He found that plaintiff had maintained his burden of proving entitlement to recovery for the payments of $860 and $352 which he had made to Mr. Venancio for the work of preparing the building for removal prior to the fire and for the removal of the debris after the fire. However, with respect to the value of the structure he concluded that there was not enough evidence before him on which he could render a decision as to damages.

In discussing Mr. Venancio's testimony, as substantially corroborated by that of Mrs. Tillinghast, as to the cost of reconstructing the building on a different site, he pointed out that the evidence showed that the new building was different in size from the old windmill. He also noted that there was no evidence of market value of the building on the day of the fire, and that because of the nature of the building, there could not be any for the reason that there

would not be evidence of comparable sales of windmills in this locale. He then stated that where the character of the property is such as to not be susceptible to the application of the doctrine of market value based upon comparable sales, resort is had to the current cost-of-reproduction-less-depreciation rule of damages, in which the element of depreciation must be taken into account. After discussing the latter rule, he held in effect that plaintiff had presented no evidence on the question of depreciation, except the testimony that the building was 100 years old, and that this was not enough. Accordingly, he ordered that judgment be entered for plaintiff only for the sum of $1,212, which represented $860 for the cost of preparing the building for removal and $352 for the cost of removing the debris.

The plaintiff has discussed at great length the various rules governing the recovery of damages for the tortious destruction of property. He talks about the diminution-of-value rule, the restoration or cost-of-repair rule, and the value-to-the-owner rule. He concedes that the diminution-of-value rule has no application in this case because that rule is based on the fact that the property has market value and he admits that a windmill in this part of the country has no market value. But he argues, as we understand his brief, that either the restoration or cost-of-repair rule, or the value-to-the-owner rule, apply to the facts of this case.

The trial justice based his decision squarely on his finding that there was insufficient evidence from which he could determine the value of the windmill. The plaintiff contends that the trial justice erred in so finding. We have examined the record keeping in mind what we said only recently in *DeSpirito* v. *Bristol County Water Co.*, 102 R. I. 50, 53-54, 227 A.2d 782, 784 that "* * * the law is always concerned that an injured party shall be fully compensated for whatever injury he may have sustained." In *DeSpirito*, we applied the value-to-the-owner rule to certain articles of per-

sonal property which had been damaged by the negligence of the water company. Our examination of the transcript convinces us that the trial justice was justified in concluding that there was not enough evidence before him on which he could render a decision as to damages to the windmill without just taking a figure from the air. In our judgment this is so whether we apply the restoration or cost-of-repair rule, or the value-to-the-owner rule.

Because of the difference in size of the two structures, the estimates of the cost of the new building are of no help in determining the cost of restoration of the old building. The plaintiff presented no evidence of the dollar value of the building just before the fire. Nor did he meet the test of the value-to-the-owner rule as set forth in *DiSpirito, supra*. On the view we take, we do not reach the question of depreciation or the plaintiff's objections to the evidentiary rulings. The award of $860 for the preparatory work and $352 for the removal of the debris was warranted.

The appeal of the plaintiff is denied and dismissed, and the judgment appealed from is affirmed.

*Albert Lisker, Milton Bernstein, Patrick O'N. Hayes,* for plaintiff.

*Martin M. Zucker,* for defendant.