276 A.2d 758.

RAYMOND THORNTON *vs.* DAVID J. FERRIS, JR. *et al.*

MAY 4, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. The plaintiff brought this civil action to recover damages for personal injuries and medical expenses resulting from an accident involving an automobile operated by the plaintiff and one owned by the defendant, David J. Ferris, Sr., and operated by his son, the defendant David J. Ferris, Jr.[1] The case was heard before a justice of the Superor Court sitting without a jury. He rendered a decision for the plaintiff for $14,716.45. The cause

---

[1]We shall hereinafter refer to David J. Ferris, Jr. as defendant.

is before this court on the defendants' appeal from the judgment entered pursuant to the trial justice's decision.

The defendants raise two questions. The first relates to the question of liability and the second to the question of damages.

## I

### The Question of Liability

The evidence as to liability is conflicting, but not complicated. The accident occurred on the morning of December 20, 1966, on a public highway in the Town of Swansea, Massachusetts. The vehicles were approaching each other in opposite directions in an area not too distant from a curve in the road. The plaintiff and defendant were alone in their respective cars and they are the only persons who testified as to what actually happened just prior to, and at the moment of, impact. Their testimony as to how the accident happened, as to the speed of the motor vehicles, and as to precisely which side of the highway the impact took place, is in direct conflict.

The plaintiff testified that defendant's car was "on a collision course" with his, and that, therefore, defendant drove onto plaintiff's travel lane where the impact occurred.

The defendant's testimony, however, was that as he came around the curve, plaintiff's car was completely over defendant's side of the road, and that the impact took place 1½ to 3 feet within defendant's travel lane.

A police officer who was dispatched to the scene of the accident testified at the trial. He described what he saw, including the location of the damaged cars and their appearance. He also related to the court the contents of a discussion he had with defendant about the accident. The defendant's statement to the officer relating to the location of the impact was substantially the same as his testimony at the trial. However, the officer testified that his

investigation showed that the accident occurred on plaintiff's travel lane.

The photographs of the area and photographs showing the condition of plaintiff's automobile after the accident were introduced in evidence, and prior to taking testimony the trial justice took a view of the area involved in this accident.

After reviewing the testimony and the exhibits, the trial justice found that the plaintiff had proven by a fair preponderance of the evidence that the accident occurred in plaintiff's travel lane where the left side of plaintiff's vehicle was struck by the left front of defendant's car which had crossed over into plaintiff's travel lane. He pointed out that the physical facts, the nature of the roadway, and the testimony of the parties as well as the testimony of the police officer, whom he characterized as a "disinterested witness," created a barrier upon which defendant's version of the accident floundered. He also said that the facts in this case were such that defendant's version of the accident was too improbable to be worthy of belief and that if defendant's version were correct all that defendant had to do to avoid this accident was merely to turn his vehicle to the right side of the road, an area which he found to be level and without obstruction.

On the basis of these findings, he concluded that plaintiff was in the exercise of due care; that he was traveling in his travel lane when struck; and that the accident was solely caused by defendant's negligence " * * * in failing to maintain control of his vehicle in that he did not operate his vehicle within his own travel lane but rather crossed over on approaching the curve into plaintiff's lane of travel."

The defendants' first contention is that the trial justice misconceived the evidence and misapplied the law on the issue of liability. We do not agree.

As we have previously stated, the evidence on the issue of liability is in direct conflict. In his decision, the trial justice expressly rejected defendant's version of how the accident happened and accepted plaintiff's. He also relied on the physical facts and on the testimony of the police officer. Where the evidence is in conflict and the parties submit a controversy on the facts as well as the law to a trial justice sitting without a jury, the decision of the trial justice will not be disturbed by this court unless the findings of fact on which the decision is based are clearly wrong, or unless it is shown that in making such findings, the trial justice either misconceived or overlooked material evidence on a controlling issue. *Meader* v. *Cosper*, 106 R. I. 462, 260 A.2d 715.

We conclude that the findings of fact made by the trial justice are supported by the evidence which the trial justice accepted, namely, plaintiff's testimony, the photos, and the testimony of the police officer. The defendants may disagree with the trial justice's view of the evidence, but they have failed to persuade us that in making the findings on which he based his decision, he misconceived or overlooked any material evidence.

There is no merit to defendants' argument that the trial justice erred in relying on the police officer's testimony as to where the accident occurred. His testimony that his investigation revealed that the accident took place on plaintiff's side of the road was admitted in evidence without objection by defendants. After the officer was asked a further question, defendants' counsel interposed an objection.[2] However, by this time, evidence of the fact in issue

---

[2]The transcript reveals the following:

"20 Q  Now were you able to make a determination, based upon your visit to the scene and the statement that you took, as to where the accident happened on the highway?

A  Yes, I did.

was already admitted and no motion to strike was made by defendants' counsel. In the circumstances the trial justice was warranted in relying on the police officer's testimony on this issue.

The trial justice based his decision on the issue of liability on his findings that plaintiff was in the exercise of due care and that the accident was caused solely by defendant's negligence in failing to maintain control of his vehicle and in crossing over into plaintiff's lane of travel. He did not base his decision on the last clear chance doctrine and, therefore, there is no need of discussing that issue here.

We affirm his findings of fact and his decision on the issue of liability.

## II
### The Damages

The medical evidence is uncontradicted. The plaintiff was hospitalized from December 20, 1966 to January 7, 1967. His total hospital and medical expenses were $1,-366.45. He sustained the following injuries: cerebral concussion; contusion of the left kidney; punctured lungs; multiple fractures of the rib cage; fracture of the right wrist and laceration of the left elbow. The plaintiff's doctor testified by deposition. The medical testimony indicates that plaintiff sustained a great deal of pain due to the type of injuries suffered. The doctor testified that

---

"21 Q  And where did it happen?

A  This is a two-lane road and my investigation revealed that *the accident took place just over on the left side, eastbound.*

"22 Q  *That would be the Thornton side of the road?*

A  *Yes,* Mr. Thornton was operating in a westerly direction.

"23 Q  I see, so that the impact incurred in his lane?

A  Yes.

"Mr. Carroll: Objection.

"The Court: Sustained."

(Emphasis supplied.)

on January 26, 1967, plaintiff told him that he was going on a trip south for a month and that he, the doctor, "* * * thought at that time that this was excellent treatment and presumably, upon his return, he should be able to return to work." The doctor further testified that he next saw him on March 2, 1967, and that at that time he allowed him to return to work.

The plaintiff testified that on advice of his doctor he went to Florida for the month of February 1967; that he was in pain throughout that month; that he returned to work part time around the 13th or 14th of March 1967; and that he returned to work full time on March 31, 1967. His monthly salary was $2,140.

The trial justice found that the injuries sustained by plaintiff were extremely painful. He awarded him $8,000 as reasonable compensation for pain and suffering and $1,366.45 for hospital and medical expenses. He found that plaintiff suffered a loss of earning capacity for ten weeks from December 20, 1966 to March 2, 1967, and awarded him $5,350 for such loss. The total award was $14,716.45.

The defendants' first argument is that the award is excessive. We do not agree.

We are satisfied that the uncontradicted evidence relative to the pain and suffering sustained by plaintiff supports the award made by the trial justice, and that the amount awarded was not an abuse of discretion. See, Simmons v. United Transit Co., 99 R. I. 460, 208 A.2d 537.

The defendants' next argument, as we understand their brief, is that the trial justice was clearly wrong in finding that the period of plaintiff's loss of earning capacity ended on March 2, 1967. They base this argument on a statement in the deposition of plaintiff's doctor to the effect that plaintiff was able to carry on his duties of employment on January 26, 1967. We have examined the transcript.

It is true that during the doctor's cross-examination by defendants' counsel he made the statement attributed to him by defendants. However, as we have stated above, during his direct examination, the doctor stated that on January 26, 1967, when informed by plaintiff of his intended trip to Florida, he thought that this was excellent treatment and presumably, upon his return, he should be able to return to work. The doctor also testified that he allowed him to return to work on March 2, 1967. It is clear that the trial justice relied on this portion of the doctor's testimony and we cannot fault him for so doing. *Meader* v. *Cosper, supra.*

The defendants' final argument on the question of damages is that the trial justice erred in refusing to allow them to cross-examine on the issue of incentive to return to work. It appears from the transcript that they were precluded from inquiring about the payment of salary to plaintiff during the period of his disability. They argue that such cross-examination should have been allowed because of the doctor's statement that plaintiff was able to carry on his duties on January 26, 1967, and because plaintiff, while in Florida for a month, never saw a doctor. They concede that under the collateral-source rule such payments could not be shown in mitigation of damages. They contend, however, that it was admissible on the question of incentive to return to work because such testimony had some bearing on the issue whether plaintiff's absence from work was honestly due to an injury received at the time of the accident or was in fact prolonged by the belief that he would be paid his salary even though he did not work. The defendants cite *McElwain* v. *Capotosto*, 332 Mass. 1, 122 N.E.2d 901, to support their position on this question.

We agree that such testimony is relevant for the purpose stated by the defendants, but, as the Massachusetts court pointed out in the *McElwain* case, cited by the defendants,

the extent of cross-examination is generally within the sound discretion of the trial justice. *McElwain* v. *Capotosto, supra,* at 3, 122 N.E.2d at 902. There is nothing in the evidence indicating that the plaintiff was a malingerer. In the circumstances we cannot say that the trial justice abused his discretion in refusing to allow the defendants to cross-examine on this issue.

The defendants' appeal is denied and dismissed; and the judgment appealed from is affirmed.

*Hinckley, Allen, Salisbury and Parsons, Guy J. Wells,* for plaintiff.

*John G. Carroll,* for defendants.