George H. PROFFITT

v.

John J. RICCI.

No. 80–400–Appeal.

Supreme Court of Rhode Island.

July 28, 1983.

James P. Flynn, North Kingstown, for plaintiff.

Amato A. DeLuca, Sandra A. Blanding, Revens & DeLuca, Warwick, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on the defendant's appeal from a judgment entered in the Superior Court pursuant to an action for assault and battery. The trial justice, sitting without a jury, awarded the plaintiff $2,000 plus interest and costs in compensatory damages. We find that the trial justice committed no reversible error; accordingly, we affirm.

The facts in this case may be briefly summarized. The plaintiff, George H. Proffitt (Proffitt), was a special agent with

the Naval Investigative Service, Office of Naval Intelligence at the Quonset Point Naval Air Station (the air station).[1] In this capacity in which he had served since 1958, he was authorized to investigate crimes committed on the premises of the air station, to perform security clearances for personnel requiring access to classified information, to carry firearms and to make arrests when appropriate. Mr. Peter DeRestie (DeRestie), also a special agent with the Office of Naval Intelligence and plaintiff's immediate supervisor at the time of the incident, testified that there had been an ongoing investigation for alleged bookmaking activities within the confines of the air station. On July 2, 1970, Proffitt had within his possession a command-authorized search warrant for the person, vehicle, and immediate surroundings of defendant, John J. Ricci (Ricci). The defendant, who was employed as a fuel operator at the air station, was en route to the fuel tanks with his partner after having cashed paychecks for himself and a friend. The plaintiff, who was driving an unmarked navy car, cut in front of and stopped the vehicle that defendant was driving. He then requested Ricci to disembark from the vehicle, simultaneously displaying his badge and telling defendant that he was an agent of the Naval Investigative Service. The defendant submitted to the search and began to empty his shirt pocket. He took out a white piece of paper and a small manila envelope. Proffitt then requested that defendant empty his trouser pocket. At this juncture, defendant interrupted the search and stated that this was "his personal money and that nobody was going to take it from him * * *." The plaintiff ordered defendant to proceed with the search but he refused and ran to a Dempsey dumpster where he deposited certain unidentified items. Expressing concern that the gasoline tanks, which he had begun filling prior to cashing the checks, would overflow, defendant climbed back into his truck and told plaintiff "[I]f you want me, I'll be down the other end."[2]

The plaintiff then mounted the running board of the truck on the driver's side and attempted to reach the key in order to turn off the ignition. Thereupon, defendant simultaneously accelerated the truck and pushed plaintiff with his elbow, causing plaintiff to fall.[3] The plaintiff landed in such a position that the left rear wheels of the vehicle ran over his right instep, twisting his body as he rolled underneath the truck. Trauma was exerted on his right leg. After returning to his office, Proffitt recounted his version of the incident to DeRestie and went to the naval medical facility for treatment and X-rays. The plaintiff testified that he had a sore right leg and a swollen, discolored foot. These ailments were treated with warm soaks and aspirin.

Approximately two weeks after this incident, Proffitt experienced intense pain in his right leg and knee, a circumstance which prompted another consultation with a physician. The plaintiff testified that if he had not gone on a previously scheduled three-week vacation, he probably would have been out of work for a short period of

---

1. The Naval Air Station at Quonset Point has been closed since June 30, 1974. At the time of the events relating to this opinion, the air station employed great numbers of civilian as well as naval personnel.

2. At trial, defendant asserted that his actions were prompted in part by his fear that he was going to be the victim of a robbery. The trial justice rejected this notion, however, in light of defendant's many years of service at the air station. The court specifically found that defendant was well aware of the air station's rules and regulations that would allow guards or other officials to stop and question individuals, and/or search a vehicle while it was upon the federal reservation.

3. There was conflicting evidence adduced at trial concerning whether defendant pushed plaintiff off the truck with his elbow in conjunction with accelerating his vehicle. Whether or not defendant did both is immaterial, however, as either of these acts is intentional and more than sufficient to warrant recovery.

time.[4] His net weekly salary at that time was approximately $200.

The plaintiff returned to work and continued to function in his job. DeRestie testified, however, that between 1970 and 1974 plaintiff requested to stay in the office because of the injury to his knee. Thereafter, Proffitt sought intermittent medical attention in 1974 and 1979 for injuries relating to the incident with defendant. The latter visit resulted in a medical expense to plaintiff of $55.

On June 21, 1972, plaintiff filed a complaint in the Superior Court for assault and battery. Subsequent to defendant's closing argument, but prior to the close of trial, plaintiff moved to amend his complaint to add a count for negligent operation of a motor vehicle. The Superior Court justice granted the motion. In his decision the trial justice held that either the act of elbowing plaintiff or that of accelerating the truck was sufficiently intentional to constitute a battery. Thereafter, defendant filed a timely appeal to this court. The issues raised by defendant will be dealt with in the order in which they appear in his brief.

■ The defendant first contends that the trial justice committed prejudicial error in finding for plaintiff on the claim of assault and battery. We do not agree. This court has consistently held that the findings of fact made by a trial justice, sitting without a jury, will be accorded great weight. Such findings will not be disturbed on appeal unless it is shown that the trial justice misconceived or overlooked relevant evidence or was otherwise clearly wrong. *Berube v. Montgomery,* 463 A.2d 158 (R.I., 1983); *Altieri v. Dolan,* R.I., 423 A.2d 482, 484 (1980); *Taffinder v. Thomas,* 119 R.I. 545, 549, 381 A.2d 519, 521 (1977); *see* 1 Kent, *R.I.Civ.Prac.* § 52.5 at 384 (1969).

4. The plaintiff further testified that he had sufficient difficulty driving his automobile on vacation so that he was required to use his left leg and that even at present he occasionally limps and favors his right leg.

■ Since in most cases assault and battery arise out of a single transaction, it has become customary to refer in legal terminology to the term "assault and battery" as if it were a legal unit or a single concept. Actually, however, assault and battery are separate and different acts, each with independent significance. *See generally,* Prosser, *Handbook of the Law of Torts* §§ 9 & 10 at 34–41 (4th ed. 1971). An assault is a physical act of a threatening nature or an offer of corporal injury which puts an individual in reasonable fear of imminent bodily harm. *Liu v. Sugarman,* 105 R.I. 727, 254 A.2d 753 (1969); *Webbier v. Thoroughbred Racing Protective Bureau, Inc.,* 105 R.I. 605, 254 A.2d 285 (1969); *see* Restatement (Second) *Torts,* § 21 at 37 (1965). The plaintiff's apprehension of injury renders defendant's act compensable. *Webbier,* 105 R.I. at 614, 254 A.2d at 290. Battery refers to an act that was intended to cause, and does cause, an offensive contact with or unconsented touching of or trauma upon the body of another, thereby generally resulting in the consummation of the assault.[5] *See* Prosser, § 9 at 35. An intent to injure plaintiff, however, is unnecessary in a situation in which a defendant willfully sets in motion a force that in its ordinary course causes the injury. *Mooney v. Carter,* 114 Colo. 267, 273, 160 P.2d 390, 392 (1945) (operating car so as to throw plaintiff off running board); *see* Prosser, § 9 at 35.

■ In the case at bar, plaintiff, an agent of the Office of Naval Intelligence, was engaged in the performance of his duty at a place where he had a right to be. The defendant by his own testimony admits that at the time of the incident Proffitt identified himself as being associated with Naval Intelligence. Moreover, defendant concedes that with the engine of his vehicle running, he told plaintiff to "[g]et off the [running

5. A battery may occur without assault under various circumstances such as when plaintiff is unaware of the contact when it occurs, or prior to the occurrence, by reason of his either being asleep or under anesthetic. Prosser, *Handbook of the Law of Torts* § 9 at 35 (4th ed. 1971).

board of the] truck because I'm going * *."
It was not necessary that defendant intend
to injure plaintiff. To constitute a battery,
it is enough to set in motion willfully a
force that in its ordinary course causes an
injury. *Mooney v. Carter*, 114 Colo. at 273,
160 P.2d at 392. Therefore, when defend-
ant implemented his threat by either accel-
erating the truck or lifting his elbow to
strike, plaintiff was placed in reasonable
apprehension of imminent bodily harm.
When defendant's elbow struck plaintiff or
when plaintiff was thrown to the ground by
reason of the acceleration of the truck, the
battery was complete. Accordingly, the ev-
idence of either action was sufficient to
support the trial justice's finding that de-
fendant was liable for the tort of assault
and battery.

■       We are not persuaded by defend-
ant's contention that the trial justice's ad-
mission of oral testimony pertaining to the
command-authorized search warrant consti-
tuted a violation of the best-evidence rule.
As we held in *State v. Ramsdell*, 109 R.I.
320, 328, 285 A.2d 399, 405 (1971), the pur-
pose of the best-evidence rule is to bar the
admission of secondary evidence to prove
the contents of a written document without
accounting for the loss or absence of the
original. It is applicable only when a liti-
gant is attempting to prove the terms of a
writing. In such circumstances, the origi-
nal writing must be produced unless a satis-
factory explanation for its absence is given.
*Id.* Excuses for nonproduction of the origi-
nal writing include loss or destruction.
*McCormick's Handbook of the Law of Evi-
dence* § 237 at 570–71 (2d ed. Cleary 1972).
In most jurisdictions, the trial judge pos-
sesses some degree of discretion in deter-
mining whether it is feasible to produce the
original document. Such discretion is ap-
propriate since the nature of the search
required to show probability of loss or de-
struction will, as a practical matter, depend
upon the circumstances of each case. *Id.*
One factor utilized to determine the extent
of the search required before loss or de-
struction will be inferred is the lapse of

time since the document was last seen. *See
id.* at 571. In the instant case, plaintiff's
supervisor, DeRestie, testified that it was
"[p]olicy * * * to retain a particular file at
headquarters   * * *   [for]   five   years."
Therefore, since the search warrant was
issued in 1970, it would in the ordinary
course have been destroyed as of 1975, five
years prior to the time that this case came
to trial in 1980. Consequently, we believe
that the trial justice properly exercised his
discretion in accepting the explanation of-
fered for the nonproduction of the original
search warrant.

■       We now turn our consideration
to defendant's argument that the trial jus-
tice misconceived material evidence relative
to plaintiff's award of $2,000 plus interest
and costs for compensatory damages, which
included loss of earnings, medical expenses,
and pain and suffering. We do not concur.
Compensatory damages are awarded to a
person in satisfaction of, or in response to,
loss or injury sustained. *Auchincloss v.
Halloran Construction Co.*, 105 R.I. 565, 571,
253 A.2d 622, 625 (1969); *DeSpirito v. Bris-
tol County Water Co.*, 102 R.I. 50, 53–54,
227 A.2d 782, 784 (1967). The trial justice,
in awarding damages, sought to compensate
plaintiff for loss of earning capacity for a
period of approximately five days, or $200,
and for a medical bill of $55. We are of the
opinion that the evidence in the case was
sufficient to support the trial justice's find-
ings concerning the reasonable cost of medi-
cal care and loss of earning capacity. *See
Thornton v. Ferris*, 108 R.I. 491, 497–98, 276
A.2d 758, 761 (1971). Although plaintiff
had adverted to other medical treatment
for which no specific evidence relating to
cost was introduced, the court awarded
compensation only for the medical bill for
which proof was presented.

■       In respect to that portion of the
judgment relating to pain and suffering,
there is no particular formula to which this
court adheres for computation of damages
due to a plaintiff for pain and suffering.
*Pimental v. Postoian*, 121 R.I. 6, 12, 393
A.2d 1097, 1101 (1978); *Worsley v. Corcelli*,

119 R.I. 260, 265, 377 A.2d 215, 217 (1977); *Calci v. Brown,* 95 R.I. 216, 223–24, 186 A.2d 234, 238–39 (1962). Furthermore, the amount to be awarded for pain and suffering is a matter peculiarly within the province of the trier of fact, whether judge or jury. *Fusaro v. Naccarato,* 103 R.I. 324, 326–27, 237 A.2d 545, 547 (1968). Therefore, we shall not disturb such an award unless it "shocks the conscience" or is grossly excessive. *See Bruno v. Caianiello,* 121 R.I. 913, 917, 404 A.2d 62, 65 (1979); *Ruggieri v. Beauregard,* 110 R.I. 197, 201, 291 A.2d 413, 415 (1972); *Tilley v. Mather,* 84 R.I. 499, 501–02, 124 A.2d 872, 874 (1956). In the present controversy, plaintiff sustained a sore right leg, a discolored foot, and significant pain in his right knee in addition to experiencing difficulty while driving his automobile and occasionally still needing to limp in order to favor his right leg. The trial justice took into account the effects of aging and of arthritic progression upon plaintiff's present condition. Accordingly, when the aforementioned standards are applied to these facts, the trial justice was acting well within the bounds of his discretion when he awarded plaintiff $1,745 for pain and suffering.

We need not consider the defendant's contention that the trial justice abused his discretion by allowing the plaintiff to amend his pleading to include a count in negligence subsequent to the defendant's closing argument since liability was determined solely on the basis of assault and battery.

For the reasons stated, the defendant's appeal is denied and dismissed, and the judgment appealed from is affirmed. The papers in the case may be remanded to the Superior Court.