**James M. O'DONNELL et al.**

v.

**STATE of Rhode Island (Director of Public Works).**

No. 81–478–Appeal.

Supreme Court of Rhode Island.

May 4, 1984.

Paul P. Baillargeon, Woonsocket, for plaintiffs.

Stephen F. Mullen, Chief Sp. Counsel for Dept. of Transp., Office of Sp. Counsel, Providence, for defendant.

OPINION

WEISBERGER, Justice.

This case arises out of the condemnation for highway purposes by the Director of Public Works (director) of approximately 2.3 acres of real property owned by James M. and Eleanor O'Donnell (the O'Donnells) and located in the town of North Smithfield on Pound Hill Road. This case came before us previously on appeal from a judgment entered in favor of the O'Donnells. *O'Donnell v. State,* 117 R.I. 660, 370 A.2d 233 (1977). At that time the judgment was vacated and the matter remanded to the Superior Court for a new trial. Since in our previous opinion the facts of the case were set forth completely, we need not fully repeat them here. However, we shall set forth hereafter the specific findings of the second trial justice, who assessed damages in favor of the O'Donnells in the amount of $125,600 together with interest and costs. The director has appealed from this judgment. For reasons that will be set forth, the judgment is affirmed.

In our previous opinion in this case, we held that the first trial justice was in error in his assessment of damages because "[h]e compensated the O'Donnells for the value of their turf plots as of 1967, the point at which they became mature stands, i.e., ripe for experimentation." *O'Donnell v. State,* 117 R.I. at 666, 370 A.2d at 236. Although we conceded that the turf plots that had been developed at considerable expense might be unique, special purpose, premium land for someone wanting to conduct turf research, we determined that the evidence in the first trial did not demonstrate that these turf plots were in a condition in May 1971 that justified the assessment of damages the trial justice had se-

lected because the plots' condition had changed from the "pristine 1967 state." *Id.* at 666–67, 370 A.2d at 237. Thus, we held that the trial justice had granted compensation based on a value other than that of the condemnation date. *Id.* at 667, 370 A.2d at 237.

The Superior Court justice who conducted the second trial was well aware of the principles enunciated in our first opinion. He delivered his decision in a carefully prepared rescript in which he related the evidence presented at the second trial to those principles. He set forth fourteen principal findings of fact based upon the expert testimony presented by the O'Donnells.

"1. A parcel of land situated in North Smithfield, to wit, Parcel # 13, Plat 1649, was lawfully taken in fee by the State from the plaintiffs on May 13, 1971. 100,248 square feet or 2.3 acres were taken.

"2. Property of the plaintiffs taken by the defendant included certain experimental application areas, a well, an unpolluted brook, and portions of a driveway.

"3. The plaintiffs had devoted a portion of the property taken to a specialized use, i.e., the experimental application of fertilizer preparations, and a measurement of the results of these applications, that were designed to determine the feasibility of processing raw sewage sludge into a commercially marketable fertilizer.

"4. The experimental applications, which were incomplete on the date of the taking, involved special purpose land that had become unique because of the type of soil, the fallowing of that soil between 1963 and 1967, the experimental compounds that had been applied to the soil between 1967 and the date of the taking, the slope of the land, the proximity of an unpolluted brook to the experimental area, and the availability of a thirty gallon per minute well nearby. Accordingly, the appropriate method of determin-

ing fair market value of these turf plots is reproduction cost less depreciation.

"5. An important aspect of the experimental process was the measurement of trace metals uptake in the grass and in the stream below, and of the nitrogen and acquifiers in the soil. These measurements were incomplete on the date of the taking.

"6. The experimental process required a minimum of five years and a maximum of fifteen years to complete, and it was underway when the land was taken.

"7. The soil and sub-soil beneath the application areas was altered, changed and improved to a depth of at least twelve feet.

"8. As a consequence of the taking on May 13, 1971, the application areas were materially and substantially destroyed and, due to their specialized and particular use, were rendered useless.

"9. The experimental process involving sewage sludge was not susceptible of being moved.

"10. A pilot plant building, * * * specially designed and adapted for the installation of equipment to compound applications, was essential to the process. Although adaptable to other uses, the plant was worth less than its original value for any such uses. Depreciation and increased cost of reproduction balanced out. Reproduction cost less depreciation is the appropriate means of determining the fair market value of the pilot plant building.

"11. The equipment of the pilot plant, specially designed and adapted for the preparation of the sewer sludge compounds, was essential to the process. Because the experimental turf plot program was not susceptible of being moved, and because the plant had no * * value other than in the preparation of experimental sludge fertilizer compounds, the equipment served no economically feasible purpose, and retained only salvage value. The appropriate

means of determining the fair market value of this equipment is reproduction cost less depreciation.

"12. A thirty gallon per minute well was taken by the State, and was replaced by a five gallon per minute well.

"13. The taking of a substantial portion of the plaintiffs' front yard and a portion of the driveway decreased the value of the residential area of the plaintiffs' property.

"14. The damages suffered by the plaintiffs as a result of the taking was $125,600. This amount represents the difference in the fair market value of the O'Donnell's property before the taking, $319,500, and the fair market value of the property after the taking, $193,900."

The trial justice considered the contentions made by the state and the testimony that was given by its experts, John R. McNally and Howard W. Hathaway, Jr. He was not persuaded by Mr. McNally's testimony since that witness had made no attempt to determine the value of the turf plots that were of major significance in the case. He substantially discounted the testimony of Howard W. Hathaway, Jr., in respect to the value of the equipment in the pilot plant since Mr. Hathaway had not appraised the equipment until more than three years after the taking, and by that time much of the integrated system had been dismantled and removed. He believed that Mr. Hathaway did not "present any valuation of the various components, or indeed evidence that he had considered and appraised all the components of this elaborate model production plant." The trial justice was far more impressed by the testimony of Professor Conrad R. Skogley of the University of Rhode Island, who testified as an expert in respect to experimental soil plots, and that of Peter A. Laudati, Jr., who appraised the before-and-after value of the real estate, particularly in regard to the value of the grass test plots on the basis of reproduction cost minus depreciation.

An examination of the testimony in the case discloses that there is an abundance of evidence to support the findings of fact of the trial justice. When this court remanded the case for a new trial, its intention was not to place the second trial justice in a legal strait-jacket but to direct the trial court's attention to certain misconceptions of evidence which had rendered the first judgment erroneous.

■ It is an oft-stated principle that the decision of a trial justice in a case tried without the intervention of a jury will not be set aside unless it can be shown that the trial justice misconceived or overlooked relevant evidence or was otherwise clearly wrong. *Proffitt v. Ricci*, R.I., 463 A.2d 514, 517 (1983); *Berube v. Montgomery*, R.I., 463 A.2d 158, 161 (1983); *Altieri v. Dolan*, R.I., 423 A.2d 482, 484 (1980). Further, a determination by the trial justice that condemned property is unique and not susceptible of valuation by the comparable sales-method is also "entitled to great weight and will be reversed only if the trial justice was 'palpably or grossly wrong.'" *O'Donnell v. State*, 117 R.I. at 665, 370 A.2d at 236; *Hervey v. City of Providence*, 47 R.I. 378, 380, 133 A. 618, 619 (1926). We are of the opinion that the trial justice, in reaching his findings of fact and drawing reasonable inferences therefrom, did not overlook or misconceive relevant evidence on any crucial issue, nor was he otherwise clearly wrong.

For the reasons stated, the director's appeal is denied and dismissed, the judgment of the Superior Court is affirmed, and the papers in the case may be remanded to the Superior Court.