**William CHEETHAM**

v.

**Marie A. CHEETHAM.**

**No. 83–235–Appeal.**

Supreme Court of Rhode Island.

June 4, 1985.

Francis J. Maguire, Connors & Kilguss, Providence, for plaintiff.

John F. Sherlock, Jr., Richard S. Cardozo, Providence, for defendant.

OPINION

WEISBERGER, Justice.

This case comes before us on appeal from a judgment entered in the Superior Court on August 3, 1982, resolving claims asserted by William H. Cheetham (former husband) against Marie A. Cheetham (former wife) and others relating to one civil action that had been filed in the Superior Court (C.A. 71–575) and to two probate appeals (P.A. 4251 and P.A. 4271). This case has come before this court on two prior occasions: *Cheetham v. Cheetham,* 114 R.I. 466, 335 A.2d 327 (1975), and *Cheetham v. Cheetham,* 121 R.I. 337, 397 A.2d 1331 (1979).

The second time this court considered the *Cheetham* case, it was remanded to the Superior Court for a hearing on the merits

in order to resolve the various claims made by the former husband against his former wife in relation to a mortuary business owned by the parties in the city of Pawtucket and claims arising out of their joint ownership of the real estate within which the mortuary business was conducted.

Pursuant to this remand the trial justice conducted further hearings, and relying in part upon those further hearings and in part upon evidence adduced prior to the remand, the trial justice delivered a careful and comprehensive rescript in which he dealt with all of the claims of the parties and came to the following conclusions:

1. The former husband did deliver to his former wife, a power of attorney executed June 30, 1967, authorizing her to conduct business on his behalf during his illness, and this power of attorney was delivered without undue influence or duress.

2. The former husband had not been illegally excluded from his home and business since 1968 because of any wrongful act on the part of his former wife. His exclusion from the home and the business was due to an extended series of mental illnesses that required "medical treatment and confinement away from his home and business." In addition, he had been enjoined from entering the premises at 1012 Newport Avenue, which was the marital domicile as well as the location of the funeral business, by judicial orders that were unappealed.

3. The former husband was entitled to no compensation for false imprisonment or illegal confinement, and his allegations of a conspiracy on the part of his former wife to bring about such events were unsupported by credible testimony.

4. The real estate at which the funeral home business was conducted was jointly owned by the parties but should be partitioned at the application of the former wife in view of the fact that the parties had been divorced and that they were unable to enjoy the use of this property together and in further view of the fact that the property was not subject to division by metes and bounds. To this end the trial justice appointed a commissioner to sell the real estate and to divide the net proceeds between the parties.

5. The former husband transferred a one-half interest in the funeral business to his wife on July 5, 1965, which action reflected that these parties were actually business partners in the funeral-home business from 1963. The former wife conducted the business in a reasonable fashion during the period of her former husband's mental illnesses and appropriately incorporated the business on or about October 1, 1968. However, the former husband was found to be entitled to a one-half interest in the business at all times, and he was entitled to an accounting of the income from the business as a partnership from July 6, 1965, to September 30, 1968, and from the corporation known as Cheetham Mortuary, Inc., from October 1, 1968, to the date upon which the report should be rendered. The former husband was entitled to an accounting from Cheetham Realty, which had acted as the lessor of real estate to the funeral home. The trial justice also provided that the former wife should convey by proper assignment 50 percent of the shares of stock held by her in Cheetham Mortuary, Inc., to the former husband.[1]

In implementation of these determinations, the court entered a judgment on No-

---

1. The trial justice was very careful in his rescript of July 16, 1979, to declare that the former husband was entitled to one half of the stock in Cheetham Mortuary, Inc. No appeal was taken from this portion of the judgment. At oral argument counsel for the former husband asserted that such a stock transfer had not yet been made. Enforcement of this order should be sought from the trial justice in the Superior Court. In affirming the judgment of the Superior Court, this court is in no way purporting to pass upon or determine the propriety or impropriety of the failure by the former wife to transfer stock in the business corporation as she was ordered to do by the trial justice.

vember 13, 1979, appointing Seth K. Gifford, Esq., commissioner to undertake the sale of real estate owned by the parties and to resolve other matters relating to the former husband in respect to a conservatorship pending in the Probate Court of the city of Pawtucket. (To this end Mr. Gifford was appointed successor-conservator as well as commissioner.) Mr. Gifford proceeded actively to perform these duties, sold the property for the sum of $100,000, and recommended a distribution of the proceeds between the parties after payment of necessary expenses. The court also appointed a certified public accountant, Frederick J. Gaucher, who prepared an elaborate accounting report of the income and expenses of the Cheetham Mortuary from 1969 to 1980, found a net income, after expenses, of $20,737 after deduction of all expenses to be divided between the parties, and recommended that each party be paid one half of said amount or $10,368.50.

The trial justice held a hearing July 16, 1982, during which he considered objections to the report after having reviewed all of the documents, legal memoranda, and supplemental materials filed and received in the case. The trial justice concluded by stating:

"I am more than satisfied as to the accuracy and the fairness of the Commissioner's report and with his recommendations contained therein. I am satisfied that his recommendations should be accepted; that the report from Professor Gaucher, that I find to be an excellent report and a thorough report, is certainly acceptable to me and accordingly, the Plaintiff's objections to the report and the recommendation by the Commission[er] are denied."

Pursuant to the decision of July 16, 1982, a final judgment was entered on August 3, 1982, providing for the payment of the commissioner's and the accountant's fees and for the distribution both of payments to creditors and of the net proceeds to the parties. From this judgment the former husband filed an appeal on August 23, 1982.

▮ It is a well-settled principle that this court will not disturb on review findings of fact made by a trial justice unless it is demonstrated that he or she was clearly wrong or that he or she misconceived relevant evidence in respect to a material issue. *Wordell v. Wordell*, R.I., 470 A.2d 665, 667 (1984); *Proffitt v. Ricci*, R.I., 463 A.2d 514, 517 (1983); *Brierly v. Brierly*, R.I., 431 A.2d 410, 414 (1981). This same principle applies to the inferences drawn by a trial justice, as well as to the credibility and weight that a trial justice attaches to the testimony of those presented as witnesses. *In re Randy B.*, R.I., 486 A.2d 1071, 1073 (1985); *Walton v. Baird*, R.I., 433 A.2d 963, 964 (1981). We have carefully reviewed the various determinations rendered by the trial justice in his written rescript and in his decisions from the bench in light of reports that were rendered to him by the commissioner and by the certified public accountant. We have also considered the arguments set forth by the former husband in his brief. It is appropriate to note that the former husband agreed to the appointment of this certified public accountant and challenges now, not the figures in the report, but only the conclusions reached by the accountant from these figures. We are of the opinion that the trial justice committed no error in accepting the reports of the commissioner and the accountant. Not only could he not be said to be clearly wrong but, on the contrary, he acted upon the only credible evidence put before him by professional appointees of the highest quality and integrity.

For the reasons stated, the appeal of the plaintiff, William H. Cheetham, is hereby denied and dismissed. The judgment of the Superior Court is hereby affirmed, and the papers in the case may be remanded to the Superior Court.

MURRAY, J., did not participate.