Janet Lee JONES

v.

STATE of Rhode Island.

No. 83–61–M.P.

Supreme Court of Rhode Island.

June 25, 1985.

 

Raul L. Lovett, A. Larry Beren (Lovett, Morgera, Schefrin & Gallogly, Ltd.) Providence, for plaintiff.

Arlene Violet, Atty. Gen., Linda S. Mac-Donald, Sp. Asst. Atty. Gen., for defendant.

## OPINION

KELLEHER, Justice.

This litigation, which involves G.L.1956 (1981 Reenactment) chapter 25 of title 12, the Criminal Injuries Compensation Act of 1972, is before us on cross-appeals. The plaintiff complains that the compensation awarded her is totally inadequate, whereas the state argues that the act precludes recovery for injuries which are the indirect result of the crimes of malicious mischief and trespassing. These contentions may be better understood after a brief recitation of the pertinent facts.

In Providence on November 21, 1980, between the hours of 4 a.m. and 6:45 a.m., some unknown individual or individuals vandalized property at the Roger Williams Park Zoo by cutting a hole in the chain-link cage that housed the zoo's "white-handed" gibbons.[1] The plaintiff reported for work at approximately 6:45 a.m. and went to the gibbons' cage area to feed them their morning biscuits. She soon discovered that things were amiss when, as she was walking in an area to the rear of the cage, she heard a noise; she turned around, and there to her surprise she saw a male gibbon hanging in the door behind her. When plaintiff made her way to the front of the cage, she saw a hole in the cage and also observed Chloe, a female gibbon, and two of her offspring in the cage. Chloe was moving forward toward the gaping hole and freedom. The plaintiff ordered Chloe to retreat to the rear, but Chloe was not of a mind to obey. As plaintiff turned to leave the area, Chloe jumped out of the cage and landed on plaintiff's left shoulder. Chloe bit plaintiff several times and, to add insult to injury, Chloe's male companion joined in the fray.

At a hearing before a justice of the Superior Court, evidence was adduced relative to plaintiff's injuries, her medical expenses, and her disability.

■ The state's appeal involves the denial of its motion for summary judgment, which was based on the state's contention that the 1972 legislation was intended to compensate only those individuals whose injuries arose as a direct result of the criminal activity in question. This contention was recently rejected and put to rest in *McCullough v. State*, — R.I. —, 490 A.2d 967 (1985), where this court in a one-issue appeal gave an affirmative response to a question inquiring whether an indirect victim of a crime is entitled to compensation under the provisions of the Criminal Injuries Compensation Act.

As we turn to plaintiff's appeal, we are reminded that the act, specifically, § 12-25-5, allows compensation for (a) expenses actually and reasonably incurred as a result of the victim's personal injury or death, (b) pecuniary loss to the dependents of the deceased victim, (c) the victim's pain and suffering, and (d) any other pecuniary loss [2] resulting from the victim's personal injury or death, the amount of which the court determines to be reasonable and nec-

---

**1.** Webster's Third New International Dictionary 956 (1961) describes a gibbon as the smallest and most perfectly arboreal anthropoid ape, having very long arms and no cheek pouches or tail.

**2.** The term "pecuniary loss," as set forth in the definitional section of the chapter, includes medical and hospital expenses and loss of past earnings, provided the victim is not compensated for these items from any other source. It does not include property damage. General Laws 1956 (1981 Reenactment) § 12–25–2(7), as amended by P.L.1984, ch. 354, § 2.

essary. This section also provides that the trial justice, in his or her discretion, can take into consideration the amount of revenue in the violent-crimes indemnity fund[3] and the number and nature of claims pending against it.

For the most part, evidence of the damages facet of this controversy was given by plaintiff in what might be described as an oral proof of claim. Most of the items of damage claimed by plaintiff were undisputed. The testimony on the loss-of-earnings and pain-and-suffering aspects of this controversy was subject to direct and cross-examination of the victim.

In her order the trial justice determined that plaintiff's total lost wages amounted to $3,968.80; her medical and hospital expenses were set at $5,091; and compensation for pain and suffering was set at $950. The aggregate of these factors was $10,009.80. The trial justice then, acting pursuant to the provisions of § 12–25–7(b), deducted from the award Blue Cross and Blue Shield payments and payments made by the city of Providence, all of which amounted to $5,208.97. Thus, the "net judgment" was $4,800.83.

The plaintiff maintains that the monetary award given by the trial justice for her loss of earnings, pain and suffering, and the statutory fee awarded her counsel was totally inadequate. In making her determination about the loss of earnings, the trial justice stressed that she was depending on the medical reports submitted at the hearing as well as her evaluation of plaintiff while she was testifying. It is obvious that this controversy involved an assessment of plaintiff's credibility.

The plaintiff testified that she was subject to nightmares that involved animals and that at times she hallucinated "large furry creatures off in the corner." These conditions necessitated recourse to psychological assistance. However, she conceded during cross-examination that she continued to have at home at the time of the hearing six cats, one dog, and two snakes. When questioned by the trial justice concerning the intensity of the pain following the biting incident, she conceded that two weeks after the biting episode the pain had started to taper off.

We have said that the amount to be awarded for pain and suffering is a matter peculiarly within the province of the trier of fact, whether judge or jury, and the award will not be disturbed unless the amount shocks the conscience or indicates that the jury was influenced by passion or prejudice or that it proceeded on some erroneous basis. *Proffitt v. Ricci*, — R.I. —, 463 A.2d 514 (1983). Additionally, findings of fact made by a trial justice in a nonjury case are to be accorded great weight and will not be disturbed on appeal unless they are clearly wrong or it is shown that the trial justice has misconceived or overlooked evidence. *Pennsylvania General Insurance Co. v. Becton*, — R.I. —, 475 A.2d 1032 (1984). In this controversy we find that plaintiff has failed to persuade us that the trial justice erred in her consideration of the elements of pain and suffering and lost earnings.

The counsel-fee issue presents another problem. The trial attorney presented an affidavit indicating that he had expended 40.8 hours in pressing plaintiff's claim and

---

**3.** The fund essentially consists of moneys assessed as costs against defendants in criminal proceedings. In addition to the usual court costs assessed against a criminal defendant, when the offense charged is a felony and carries a maximum penalty of five or more years' imprisonment, costs will include $100 or 10 percent of any fine imposed, whichever amount is greater; a $60 or a 10 percent fine, whichever is greater, will be imposed when the offense charged is a felony but carries a maximum penalty of less than five years; and if the offense charged is a misdemeanor, costs will include an additional $20 or 10 percent of the fine imposed, again, whichever sum is greater. These costs will be assessed whether or not the defendant is imprisoned, and in no case shall the costs be remitted. In situations in which there are multiple counts or charges disposed of simultaneously, the trial justice has the authority to suspend payment of the costs just enumerated on all charges above the number of three. Section 12–25–12, as amended by P.L.1984, ch. 258 § 1.

expressed the belief that a reasonable fee for such work should be $65 an hour. Thus, he was seeking a total of $2,652. The trial justice authorized payment of a fee of $720 to the firm with which the attorney was associated.

■ The award of counsel fees is now governed by the terms of § 12–25–8, as amended by P.L.1984, ch. 354, § 2.[4] As a general rule, the amount of compensation to be awarded a plaintiff's attorney shall not exceed 15 percent of the total amount awarded to the plaintiff or $2,000, whichever is less. After the plaintiff's attorney has filed a statement setting forth the amount proposed, the trial justice, in awarding a fee, shall consider the time expended by the attorney in preparation and in court attendance, the total amount awarded to the plaintiff for injuries incurred, and the amount of revenue in the indemnity fund, together with the number and nature of the claims pending against it. The statute also provides that if the trial justice rejects the proposed fee, the trial justice shall, upon notice to the attorney, determine the amount of the fee. Since notice implies a hearing and a hearing has not been held on the fee facet of this controversy, a remand is necessary.

The plaintiff's appeal is denied in part and sustained in part, and the case is remanded to Superior Court for further proceedings in accordance with this opinion.

**4.** Counsel's attention is also directed to Rule 1.9 of the Superior Court Rules of Practice approved on December 12, 1983.