[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
INTRODUCTION
This action arises out of a longstanding neighborhood feud between the parties. Their Hatfield and McCoy-like saga unfolded in a bench trial that lasted several days during which time the Court heard testimony of the parties, some of their children and other parents from the neighborhood. Plaintiffs Lawrence and Joanne Groff and defendants David and Suzanne Maurice have lodged a variety of tort claims against each other arising out of confrontations between them in 1985 and 1986 for which they seek compensatory and punitive damages. Plaintiffs also have invoked the equity jurisdiction of the Court.
THE GROFFS' CLAIMS
The complaint of plaintiffs Lawrence and Joanne Groff, distilled to its essence, is that defendants David and Suzanne Maurice are liable, pursuant to R.I. Gen. Laws § 9-1-3, for the wilful and malicious acts of their minor son, Keith Maurice, that resulted in the destruction of plaintiffs' property and injury to plaintiffs' persons. Complaint, paragraphs 3-6. In addition, plaintiffs seek to hold defendants liable for aiding and abetting that tortious conduct. Complaint, paragraphs 5-6. Finally, plaintiffs claim that defendants, singly, jointly and in concert with others, pursued a constant and continuous course of conduct which was intended to and did cause plaintiffs great emotional distress, interfered with their right to peacefully use and enjoy their home and resulted in damage to plaintiffs' property. Complaint, paragraph 7.
Parental Liability For The Torts Of A Minor Under R.I. Gen. Laws§ 9-1-3
At common law, parents generally are not liable for the torts of their children. See Rhode Island Practice Series, Tort Lawand Personal Injury Practice, § 150 at 175-177 (1990);Travelers Indemnity Co. v. Brooks, 395 N.E.2d 494, 496 (1977). R.I. Gen. Laws § 9-1-3 abrogates the common law by imposing limited liability upon parents for certain wilful and malicious acts of their minor children. The statute provides as follows:
 The parent or parents of any unemancipated minor or minors, which minor or minors wilfully or maliciously cause damage to any property or injury to any person, shall be jointly and severally liable with such minor or minors for such damage or injury to an amount not exceeding fifteen hundred dollars ($1,500) if such minor or minors would have been liable for such damage or injury if they had been adults; provided, nothing herein shall be construed to relieve such minor or minors from personal liability for such damage or injury. The liability herein provided for shall be in addition to and not in lieu of any other liability which may exist at law.
R.I. Gen. Laws § 9-1-3.
As the statute is in derogation of the common law, it must be strictly construed and should not be extended by implication.See Andrade v. State, 448 A.2d 1293 (R.I. 1982); McKinney v.Caball, 198 N.W.2d 713 (1972). For parents to be liable under R.I. Gen. Laws § 9-1-3 for the torts of a minor child, the plaintiff must prove that the minor child intended to do an act which caused injury or damage and that the child intended to cause injury or damage. See Peterson v. Slone,383 N.E.2d 886, 888 (1978). There must be proof of physical damage to property or personal injury. In re: Zephrin D, 519 A.2d 806, 808 (1987). The statute requires parents of young tortfeasors to compensate those who are damaged or injured even though the parents are without fault, rather than letting the loss fall upon innocent victims. See Kelly v. Williams, 346 S.W.2d 434, 438 (1961).
Plaintiffs cite an egg-throwing incident in September of 1986 involving ten-year-old Keith Maurice as the primary basis upon which they seek to impose parental liability on defendants pursuant to R.I. Gen. Laws § 9-1-3. The Court finds that the evidence adduced at trial is insufficient to support plaintiffs' claims for relief under that statute.[1]
In September of 1986, the Groffs went away on vacation to Lake George and hired Mr. John Neill, a private investigator, ostensibly to watch over their home while they were away. Before they left home, Mr. Groff pointed out Keith Maurice to Mr. Neill and identified him as one of the neighborhood children who was "harassing" him. It is undisputed that, after the Groffs left home, Keith Maurice (who was ten years old at the time) threw eggs at the Groffs' car. Photographs admitted into evidence show egg stains on the front windshield and an interior window of the car. Keith Maurice admitted that he intended to throw the eggs but indicated that he did not intend to cause any damage[2]. The Groffs certainly had given young Keith fair reason to dislike them, as Mrs. Groff conceded that she called him "Lippy" on many occasions in reference to his congenital hair lip. Keith Maurice testified that these statements made him feel like he was "a foot tall."
There is no evidence that the Groffs ever reported the egg-throwing incident to the Lincoln Police. Although the Groffs complained to the police about the Maurices on dozens of occasions (whereupon the police habitually advised the Groffs simply to ignore their neighbors), they chose, in this instance, to forego police intervention and file the instant complaint. The original complaint was filed by Mr. Groff, acting as attorney and client, admittedly for the purpose of trying to stop the Maurices' alleged neighborhood misconduct rather than receiving compensation for injuries. In that complaint, plaintiffs seek compensatory damages in the amount of $50,000 and punitive damages in the amount of $250,000.
At trial, however, plaintiffs claimed damages from this incident totalling a mere $75.00. They presented an affidavit from William Miosi, pursuant to R.I. Gen. Laws § 9-19-28, as the only support for their damages claim. In the affidavit, Mr. Miosi attests that he is a duly authorized representative of Livco Enterprises, an auto service business, who is actively engaged in cleaning automobiles and qualified to estimate the value of cleaning automobiles. He further attests that the fair and reasonable cost of cleaning the Groffs' automobile is set forth in a bill attached to the affidavit totalling $75.00. The bill itself is from Livco Enterprises to the Groffs, dated August 21, 1986, for shampooing the interior and buffing and waxing the exterior of the car.
Plaintiffs have failed to prove damages necessary to sustain a cause of action under R.I. Gen. Laws § 9-1-3. First, the affidavit submitted was never admitted into evidence by the Court. In addition, the affidavit was not in proper form to be admissible as evidence of the cost to repair the alleged damage to plaintiffs' automobile, pursuant to R.I. Gen. Laws § 9-19-28. The affidavit is not a sworn statement of what portions of the automobile were repaired together with an itemization of the costs of those repairs attested to by the person making the repairs or under whose control the repairs were made. Instead, it purports to be an estimate of those repair costs but improperly makes reference to what purports to be an actual repair bill (which is not properly attested to) rather than properly itemizing the estimate. More importantly, the affidavit fails to establish damage to the Groff vehicle. At best, it simply estimates the cost of shampooing the interior and buffing and waxing the exterior of an automobile. There is no evidence that such cleaning services were necessary as a result of the egg-throwing incident. Presumably a little soap and water on the windows could have done the trick, at no cost to the plaintiffs.
Even if raw egg on the windshield and interior window of a car could somehow rise to the level of "damage to property" within the meaning of R.I. Gen. Laws § 9-1-3, there is no evidence here that Keith Maurice intended to damage the Groff vehicle. Although he may have intended to throw eggs at the car, there is no evidence that he intended in so doing to damage the vehicle. His testimony during cross-examination suggests that he did not intend to damage the vehicle, and no contrary evidence was presented.
Under these circumstances, the Court finds that this incident is not within the class of incidents intended to be addressed by the Rhode Island statute imposing parental liability for the torts of a minor. The Groffs cannot be said to be innocent victims who sustained damages at the hands of the Maurices' minor son for which they deserve compensation. In fact, in asserting the claim, it appears that Mr. Groff did not seek compensation but instead sought peace or retribution.
In addition, plaintiffs have failed to prove that Keith Maurice engaged in any other acts that resulted in injury to them or damage to their property for which they could hold his parents liable. While plaintiffs suggested that Keith Maurice threw a hard object at the house during the egg-throwing incident that cracked a clapboard, the Court finds insufficient evidence to connect the broken clapboard to that incident. It appears more likely that the cracked clapboard resulted from weathering or ordinary wear and tear than from the tennis ball Keith acknowledged he threw. In addition, there is insufficient proof of damage to property or an intent to cause damage to property arising out of this ball-throwing episode. Absent proof of intentional damage to property or injury to persons resulting from intentional acts of their minor son, defendants cannot be held liable under R.I. Gen. Laws § 9-1-3.
Aiding And Abetting The Torts Of A Minor
Similarly, defendants cannot be held liable for aiding and abetting their minor son. An individual only will be held liable for harm resulting to a third person from the tortious conduct of another if he or she "knows that the others' conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so conduct himself." Curtin v.Lataille, 527 A.2d 1130 (R.I. 1987) (quoting 4 Restatement (Second) Torts § 876(b) (1979)).
Here, there is no proof of tortious conduct on the part of Keith Maurice that defendants could have aided or abetted. In addition, plaintiffs have failed to adduce any evidence that Keith Maurice's parents knew of his egg-throwing or any other misdeeds at the time that conduct was occurring and encouraged or assisted Keith in committing those acts.
Other Tort Claims
Finally, the record is devoid of any evidence to support plaintiffs' claim that defendants singly, jointly and in concert with others pursued a constant and continuous course of conduct which was intended to and did cause plaintiffs great emotional distress, interfered with their right to peacefully use and enjoy their home, and resulted in damage to plaintiffs' property. Complaint, paragraph 7.[3] Both plaintiffs conceded under cross-examination that defendants caused them no physical harm or damage to their property. Joanne Groff conceded that the claim asserted against defendants for damages arising out of the tortious conduct of their minor son was her only claim. To the extent Lawrence Groff asserted, in addition, a more generalized claim for harassment, he failed to prove any discrete tortious acts of defendants — much less a pattern of such tortious conduct. Mr. Groff obviously felt harassed, but his subjective feelings do not establish a legally sustainable cause of action.
THE MAURICES' CLAIMS
Defendants Suzanne and David Maurice have asserted a counterclaim against plaintiffs Joanne and Lawrence Groff seeking compensatory and punitive damages for alleged wilful and malicious damage to property, defamation and tortious conspiracy. Counterclaim, Counts I, II and IV. In addition, defendant Suzanne Maurice has counterclaimed against plaintiff Joanne Groff for compensatory and punitive damages arising out of an alleged assault.
Intentional Damage To Property/Tortious Conspiracy
At trial, defendants did not press their claims for malicious damage to property or tortious conspiracy. As the record is devoid of evidence to support these claims, defendants' requests for relief thereon must be denied.
Defamation
While defendants pressed their claim for defamation at trial based on alleged "name-calling" by the Groffs of the Maurices, they did not particularize the statements that they assert were defamatory. A review of the record discloses no testimony of any statements made by either Joanne or Lawrence Groff about either Suzanne or David Maurice. The only testimony about name-calling by the Groffs concerned statements made to children who are not parties to this action. As a result, defendants' claim for defamation must be denied.
Assault
The assault claim asserted by Suzanne Maurice against Joanne Groff is rooted in an incident following a Little League baseball game attended by the two mothers in May of 1986. Evidence related to this incident was presented to the Court by way of several police reports, the testimony of the two women, and the testimony of witnesses to the incident. Many discrepancies exist in the accounts of the aftermath of that Little League game.
The Little League incident occurred on May 5, 1986. Two days later, on May 7, 1986, Suzanne Maurice filed an assault complaint against Joanne Groff with the Lincoln Police Department. May 7 was the same day that Lawrence Groff's mother died — a fact that was known to the Maurices. Suzanne Maurice declined to press the assault charge. The police took no statement of Joanne Groff at or about the time of the alleged incident.
According to Suzanne Maurice's statement given to the police on May 7, 1986, her son and the Groff's son got into a fight after the game regarding its outcome. Mrs. Maurice stated that, while they were fighting, Mrs. Groff insulted the Maurice child. Mrs. Maurice stated that she took offense to this and "let Mrs. Groff know" as she was about to leave in her vehicle. According to Mrs. Maurice, Mrs. Groff then got out of her vehicle and grabbed Mrs. Maurice by the jacket lapels and shook her, finally pushing her away and striking her chin in the process. Mrs. Maurice also admitted that she slightly kicked the license plate of the Groff vehicle. See Plaintiffs' Exhibit 40.
At or about this time, Suzanne and David Maurice had occasion to meet with their lawyer concerning the "continuous physical and verbal abuse and harassment by the Groff family." Their lawyer wrote Mr. Groff a letter on May 14, 1986 indicating that defendants were prepared to take legal action and asking to meet to discuss the matter. Plaintiffs' Exhibit 37. The letter was not directed to Joanne Groff and made no express mention of the assault incident. The Maurices, in fact, took no legal action until the Groffs sued them, over four months later.
On or about September 7, 1986 (following the alleged egg-throwing incident), plaintiffs filed their complaint in this action. On or about October 7, 1986, defendant Suzanne Maurice reasserted her claim for assault against Joanne Groff (which she had dropped five months earlier) by way of a counterclaim to plaintiffs' suit.
On October 20, 1986, Suzanne Maurice returned to the Lincoln Police Department, with her friend and neighbor Elaine Lemire, to "resurrect" her complaint of assault against Joanne Groff. Suzanne Maurice related the following circumstances that led up to the alleged assault:
 She stated that Mrs. Groff was verbally assaulting her 11 year old son, Keith, whom she stated has a hair lip. Mrs. Groff was allegedly calling the youth "Lippy" and chicken shit. Mrs. Groff's son, Benjamin, and Keith were fighting and it was said that the verbal abuse was continuing. Mrs. Maurice viewed this particular incident from a distance. While Mrs. Maurice was walking past the Groff vehicle, Mrs. Maurice stated that she kicked the license plate and said "you better cut it out Joanne." Mrs. Maurice further stated that at this point Mrs. Groff got out of her vehicle and grabbed her with two hands by the front of her sweater and was shaking her and calling her a "chicken shit". Mrs. Maurice stated that when Mrs. Groff released her she did so with a pushing upward movement and inflicted a glancing blow to her jaw.
Plaintiffs' Exhibit 40.
Mrs. Lemire told the police that after the game she was coming around the school from the opposite direction with a number of other people, when she heard her husband yell out. She stated that she looked up and viewed Mrs. Groff shaking Mrs. Maurice. She said that her husband ran to the scene, and when Mrs. Lemire arrived, she stated that she saw that Mrs. Maurice's face was reddened. Plaintiffs' Exhibit 40.
On October 23, 1986, the police took a statement from Joanne Groff concerning the alleged assault incident. In a signed statement, she described the incident as follows:
 I was attending a Little League baseball game at the Lonsdale field when the incident occurred. My three children were with me at the time. My son's team lost the game. As we were walking to the car, Keith Maurice said "I'm fucking glad your brother's team lost. . . ." My son Ben confronted Keith about that statement he made and the two of them ended up in a wrestling match that lasted about a minute or less. Neither boy was hurt. When I got to the car, I put my chair in the trunk and the kids and I were in the car. I was about to put my keys in the ignition when Suzanne Maurice and her children came from behind the school. She had a very determined look on her face. She came to the front of my car, set her chair on the side of my car then took her foot and kicked the grill on the front of my car. We had no words or contact between us that day.
Plaintiffs' Exhibit 40. On the second page of the report, Joanne Groff continued:
 I got out of the car and asked her what the hell she was doing. Then, it was just a shouting match between the two of us. I walked backwards to open my car door. I opened the door and she took her foot and kicked the door closed. So then, I nudged her shoulder with my left hand so I could gain access to my car to leave. Sue Maurice was standing so close to my car door that I would not have been able to open it without hitting her. Then, she nudged me on my shoulder. Then, there was just more shouting between the two of us. Then, my children and I got in the car and started to leave.
Plaintiffs' Exhibit 40.
When the police asked Joanne Groff why she nudged Suzanne Maurice, she stated "so I could get into my car and leave." She denied grabbing Mrs. Maurice with both hands and shaking her on the day in question. When asked if she exchanged any words with Keith Maurice that day, she said she told him to get out of my way you little twirp (prior to the car being kicked and in response to the remark he made about her son's team losing). Plaintiffs Exhibit 40.
On the October 20, 1986 police report concerning this incident, there is a notation dated October 30, 1986. It indicates that the Town Solicitor reviewed Suzanne Maurice's complaint and advised that she should file in the district court on her own if she wished to pursue the matter. The Lincoln Police department gave notice of this decision to Mrs. Maurice and counsel to the Groffs.
At trial, Joanne Groff's description of the alleged assault incident did not depart materially from the statement she gave police on October 23, 1986. She acknowledged in her testimony that she intended to touch Suzanne Maurice.
In contrast, Suzanne Maurice's trial testimony differed markedly from her past accounts of the assault incident and also from the past account and trial testimony given by her friend, Elaine Lemire. She denied that she kicked the door of the Groff vehicle, but she admitted that she used her hand to stop Joanne Groff from closing her car door as she was going to close it. She expressly stated that she prevented Joanne Groff from closing her car door and indicated that it was at that point that Joanne pushed her back slightly with her hand. She acknowledged that she suffered no injury, that she needed no medical attention and that the push she received was not a major force. Significantly, she testified concerning a slight push (the same push that Joanne Groff acknowledged) but made no mention of being grabbed by the jacket lapels or sweater and shaken, as she had stated to the police. Elaine Lemire, in contrast, testified to a more graphic assault incident (that she acknowledged she saw from a distance from behind her husband who saw nothing) where Mrs. Groff grabbed Mrs. Maurice's sweater with both hands and then raised her hand and struck Mrs. Maurice in the chin.
The Court rejects much of the description of the assault incident contained in the statements given by Suzanne Maurice to the Lincoln Police Department on May 7, 1986 and October 20, 1986 as well as the statement given by Elaine Lemire to the police on October 20, 1986 and her testimony at trial. The Court finds, based on the trial testimony of Joanne Groff and Suzanne Maurice and the statement given by Joanne Groff to the Lincoln Police on October 23, 1986, that Joanne Groff did not grab Suzanne Maurice by the jacket lapels or sweater, shake her or strike her in the chin. The Court finds, instead, that Joanne Groff pushed Suzanne Maurice slightly on the shoulder, after Suzanne Maurice prevented her from entering her automobile, in an effort to regain access to her vehicle.
An assault is a physical act of a threatening nature or an offer of corporal injury which puts an individual in reasonable fear of imminent bodily harm. Proffitt v. Ricci, 463 A.2d 514, 517 (R.I. 1983); Lin v. Sugarman, 105 R.I. 727, 254 A.2d 753
(1969); Webbier v. Thoroughbred Racing Protective Bureau, Inc.,105 R.I. 605, 254 A.2d 285 (1965); Restatement (Second) Torts, § 21 at 37 (1965). Battery refers to an act that was intended to cause, and does cause, an offensive contact with or unconsented touching of or trauma upon the body of another, thereby generally resulting in the consummation of the assault. Proffitt v.Ricci, 463 A.2d at 517; see generally Prosser, Handbook onthe Law of Torts, §§ 9 and 10 at 34-41 (4th ed. 1971).
A defense to the intentional torts of assault and battery inures to one who is acting in reasonable defense of his or her property. In re Paul F., 543 A.2d 255 (R.I. 1988); see also
Prosser, § 21 at 131-34. The force used must be of a kind appropriate to the defense of the property. In re Paul F., 543 A.2d at 257; Rowe v. Hawkins, 1F F 91, 175 Eng. Rep. 640 (1858) (cited in Prosser, § 21 at 132 n.14) (force necessary to let plaintiff let go of bridle). The reasonableness of the force used is a question of fact for the Court to decide. Hughesv. Babcock, 37 A.2d 551 (1944).
In this case, plaintiff Joanne Groff, by her own admission, intended to slightly push, and in fact did slightly push, defendant Suzanne Maurice, without her consent. Suzanne Maurice, by her own admission, received this slight push immediately after she intentionally used her hand or otherwise acted to prevent Joanne Groff from entering her car. Joanne Groff administered the slight push, therefore, with a minimal degree of force — that which was reasonably necessary to resist the defendant's intentional effort to prevent her from entering and retaking possession of her automobile. This slight push that plaintiff Joanne Groff gave defendant Suzanne Maurice (which, if viewed out of context, might have amounted to an act of assault and battery) was therefore a privileged act exercised in reasonable defense of property. Accordingly, defendant Suzanne Maurice's counterclaim for assault lodged against plaintiff Joanne Groff must be denied.[4]
EQUITABLE RELIEF
Plaintiffs have invoked the equity jurisdiction of the Court by seeking such injunctive relief as the Court deems just and proper. Issuance of an injunction and the scope and quantum of injunctive relief rests in the sound discretion of the trier of fact. DeNucci v. Pezza, 114 R.I. 123, 329 A.2d 807 (1974).
Courts do not generally enjoin parties from violating the law, however, without proof of a real likelihood that such a violation will occur. Derwin v. General Dynamics Corp.,719 F.2d 484, 491-92 (1st Cir. 1983). Yet, "when defendants are shown to have settled into a continuing practice . . ., courts will not assume that it has been abandoned without clear proof. . . ."United States v. Oregon State Medical Society, 343 U.S. 326, 333 (1952). Even the voluntary cessation of illegal conduct does not moot an action for injunction "if there is a possibility of recurrence, since otherwise the defendants `would be free to return to [their] old ways.'" Chang v. University of RhodeIsland, 606 F. Supp. 1161 (D.R.I. 1985) (quoting Allee v.Medrano, 416 U.S. 802, 810-11 (1974) and Gray v. Sanders,372 U.S. 368, 376 (1963)).
The parties spent much of the trial detailing the minutia of their hostile neighborhood relationship. Regaled with testimony concerning every harsh word spoken and every unneighborly misdeed, a clear picture emerged for the Court of life on Maria Street.
For the first several years that the Groffs, Maurices and other neighbors lived in the neighborhood, they apparently enjoyed cordial, if not friendly, relations. The Groffs and Maurices socialized at each other's homes. Frank Medeiros painted Lawrence Groff's house. The neighbors all had very young children who often played together.
In the spring of 1981, a rift developed between the Groffs and the Medeiroses. It resulted from a confrontation between them over alleged name-calling of Wayne Medeiros by Mrs. Groff and her view that he was not playing nicely with her son, Ben. The Groffs and Medeiroses have not spoken to one another since that time.
From approximately 1975 until 1985, Ben Groff and Keith Maurice were best friends. In early 1985, however, they began to drift apart. Keith preferred to play basketball with Wayne Medeiros than to play with Ben; in turn, Ben was not particularly interested in playing basketball. This normal change in child relations set the stage for parental confrontation.
Early in 1985, Mrs. Groff and Mrs. Maurice had a heated argument over the fact that Keith was spending much of his time playing basketball with Wayne rather than playing with Ben. Soon thereafter, the parties had a confrontation over the fact that basketballs from the Maurices' driveway were going over the fence, landing in the Groffs' yard and being kept by the Groffs. The Maurices accused Lawrence Groff of "stealing" their basketballs and filed a complaint with the Lincoln Police. Mr. Groff was advised by the police to return the balls to de-escalate the conflict, and he did so. He admitted much of his behavior was childish.
In the spring and summer of 1985, Mr. Groff testified that he received numerous crank phone calls. He suspected young Keith Maurice as the caller, but he failed to prove that allegation at trial.
In December of 1985, a confrontation ensued between Mr. Maurice and Mr. Groff after Mr. Maurice tailed Mr. Groff home one night using his high beams. Mr. Groff had a baseball bat in his hand, there was yelling between the parties, and the police were called to end the disturbance.
In March of 1986, an advertisement appeared in the Yankee Trader advertising Mr. Groff's valuable baseball card collection for sale for a mere $20.00. Mr. Groff believed the Maurices were behind this advertisement, but he failed to prove that allegation at trial. The Maurices clearly knew more about the advertisement than they admitted at trial.
In May of 1986, the Little League incident which was discussed earlier occurred. That same week, following the death of Mr. Groff's mother, he received a copy of her obituary in the mail with the word "Congratulations" written on it. Again, Mr. Groff believed the Maurices were behind this deed, but he failed to prove that allegation at trial. Again, the Maurices clearly knew more about this misdeed than they admitted at trial.
In August of 1986, the Groffs had a family reunion. Keith Maurice and other neighborhood children taunted the outdoor guests from the roof of a shed in the Maurices' yard. Other neighbors (including Suzanne Maurice) gathered in the street to mock the Groffs.
Shortly thereafter, Mr. Groff hired a private investigator who witnessed the egg-throwing incident described earlier. During the preceding year and one-half, Mrs. Groff called Keith Maurice names and frequently used profanity. The children called her names. In fact, all of the parties had occasion to use harsh words toward one another.
The active feuding among the parties (where no one was without blame) culminated in September of 1986 when plaintiffs filed this lawsuit and defendants responded with their counterclaim. In the six years that this suit has been pending, there have been no further incidents between the parties. Neither party has sought interim injunctive relief. Plaintiffs and defendants simply have ignored each other.
In these intervening years, their children have grown up. Most of these young people are in high school. It is they who are the true victims of this litigation. The Court witnessed their pain; it was evident on Ben Groff's face and in the testimony of Kelly Maurice: "it's really the kids who are hurting. It's the parents, it's them."
The children have not been allowed to play freely in the neighborhood. It has been a given, for all of these years, that the Groffs' home and yard is off-limits to the Maurices, and the Maurices' home and yard is off-limits to the Groffs.
The children have seen parents swear at children, yell at their neighbors, make fun of other people and engage in childish pranks. They have been taught that an effective way of dealing with minor neighborhood conflict is to call the police or take your neighbor to court. They have been called upon by their parents to testify at a trial of last resort.
The Court has given careful consideration to the imposition of mutual restraining orders — barring the parties from having any contact or otherwise harassing one another in any way. Such orders would ensure that the parties would not "return to their old ways" once this lawsuit has ended. Chang v. University ofRhode Island, 606 F. Supp. 1161 (D.R.I. 1985).
There is insufficient evidence, however, to support the conclusion that the type of conduct that occurred among the parties in 1985 and 1986 will reoccur, absent injunctive relief. The parties conceded at trial that there have been no further incidents between them in over six years. Their children have grown up and life on Maria Street has shifted away from the streets and backyards, thereby eliminating much of the cause and opportunity for neighborhood conflict. In going to trial, the parties sought primarily to vindicate themselves and validate their actions of the past. There was no testimony reflective of a concern on anyone's part that conduct such as that which occurred in 1985 and 1986 might reoccur.
There is insufficient cause, therefore, for the Court to believe that the parties will cease their peaceful co-existence. Now that this trial is over, the Court is hopeful that they can put the past behind them and go on to enjoy more normal neighborhood relations. Even if they are unable to forget the past, the Court is confident that they will heed the advice articulated by many of the parties and other witnesses at trial and continue simply to ignore each other.
To order injunctive relief, under these circumstances, would be unjustified and might have the unintended effect of rekindling a fire that has all but died out. As the parties' active conflict ended years ago, gave rise to no sustainable causes of action and shows no signs of re-igniting, equitable relief is hereby denied.
CONCLUSION
In summary, both the complaint of the plaintiffs, Lawrence and Joanne Groff, and the counterclaim of the defendants, David and Suzanne Maurice, are denied and dismissed. Counsel shall prepare an appropriate form of judgment for entry by the Court.
[1] Apart from insufficiency of evidence, defendants also seek dismissal of plaintiffs' statutory claim on the grounds that parental liability cannot be imposed on them under R.I. Gen. Laws § 9-1-3, as a matter of law, because the child whose conduct is at issue (namely Keith Maurice) was not joined as a party-defendant to the action. The Court rejects this argument.
The statute makes parents and their minor children "jointly and severally liable" for the wilful torts of the minor. Joint and several liability, by definition, makes both parties liable and allows the injured party to sue either or both, at its option. See Black's Law Dictionary, at 837 (6th ed. 1991). As a result, plaintiffs here, as the putative injured parties, could elect, pursuant to R.I. Gen. Laws § 9-1-3, to sue and seek to hold liable defendants David and Suzanne Maurice for the torts of their minor son, Keith Maurice, without also suing and seeking to hold Keith Maurice liable for his own actions.
[2] While defendants have suggested that a ten-year-old child is incapable, as a matter of law, of intending to do an act which causes injury or damage, the Court rejects this argument. The question of intent is an issue of fact for the Court to decide, taking into account the child's age, education and experience.See Hanks v. Booth, 726 P.2d 1319 (1986); Farm Bureau MutualInsurance Co. v. Henley, 628 S.W.2d 301 (1982); cf. Caparcov. Lambert, 402 A.2d 1180 (R.I. 1979).
[3] As defendants accurately noted at trial, plaintiffs have improperly plead multiple causes of action within Count I of the complaint (liability for the torts of a minor under R.I. Gen. Laws § 9-1-3, aiding and abetting the torts of a minor, intentional damage to property, nuisance and conspiracy to cause intentional damage to property and to cause nuisance). For purposes of its decision, however, the Court has treated the paragraphs in Count I as containing separate and distinct tort claims and addressed each claim accordingly.
[4] It should be noted that plaintiff Joanne Groff could not be liable, under any theory, for damages resulting from this Little League incident. Defendant Suzanne Maurice has denied any harm resulting from the push that could give rise to compensatory damages. As it is clear from the testimony of Suzanne Maurice, as well as that of Joanne Groff, that Joanne Groff did not act with actual malice or in such a reckless and wanton manner as to amount to malice, punitive damages likewise would be unavailable.See Pimental v. Postoian, 393 A.2d 1097 (R.I. 1978).